



# OPINION

No. 04-09-00579-CV

**UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO**,
Appellant

v.

Michelle **STEVENS**, Individually and as Next Friend of Kyra Stevens, a Minor,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-15439
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:   Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  August 31, 2010

AFFIRMED

The University of Texas Health Science Center at San Antonio (UTHSC) appeals the trial

court's order denying its plea to the jurisdiction in a lawsuit filed by Michelle Stevens,

Individually and as Next Friend of Kyra Stevens.  In this accelerated appeal, UTHSC argues the

trial court erred in denying its plea to the jurisdiction because UTHSC conclusively established it

did not receive notice of the claim within six months of the date of injury as required by section

101.101 of the Texas Tort Claims Act (the TCA).  TEX. CIV. PRAC. & REM. CODE ANN.

§ 101.101 (Vernon 2005).  Additionally, UTHSC argues that the trial court committed error in finding the alleged mistake was "open and obvious."  Because a fact issue was raised regarding actual notice, the trial court did not err in denying the plea to the jurisdiction.  We affirm the judgment of the trial court.

### FACTUAL BACKGROUND

On March 8, 2006, Kyra Stevens was treated at Christus Santa Rosa Hospital Emergency Room in San Antonio for a severe laceration to her leg.[1]  Stevens was a patient of attending physician Dr. Leslie Hunter, who received the assistance of a UTHSC resident, Dr. Parul Patel.[2]  Dr. Patel mistakenly injected an anesthetic into Stevens' wound that was designed for topical use only.  Before Dr. Patel even finished the injection, Dr. Hunter discovered the mistake and stopped the procedure.  Dr. Hunter then called poison control, and as per their instructions, the wound was immediately treated with ice to slow any reactions.  Because of the volume of anesthetic injected into Stevens, poison control verified that it was potentially toxic to Stevens.  Therefore, Stevens was monitored in the emergency room for cardiac arrhythmias and seizures and provided IV fluids.  According to Stevens, as a result of the improper injection, she returned a week later with a chemical burn necessitating a skin graft.

UTHSC has a number of residency programs allowing its residents to practice medicine in various hospitals, including Santa Rosa.  Dr. Jon Courand, the Director of UTHSC's Pediatrics Residency Programs, supervises the pediatric residents at Santa Rosa, and has an office in Santa Rosa Pavilion.  The record shows that around the time of the incident, Dr. Courand contacted Dr. Patel and discussed the nature of the care received by Stevens.  According to Dr. Courand, he

---

[1]  Christus Santa Rosa Hospital will be referred to as Santa Rosa.
[2]  Dr. Hunter is a private, non-faculty, attending physician, independently contracted by Santa Rosa through Team Health, a professional association.  However, prior to the Stevens incident, Dr. Hunter agreed with UTHSC to supervise residents and accept a stipend from UTHSC for the supervision.

conducted a morbidity and mortality conference based on the erroneous injection and used the incident as a teaching tool for residents to better understand hospital policies and procedures. Santa Rosa risk management also contacted Dr. Patel regarding the incident.

On August 15, 2006, Stevens sent letters to Dr. Patel, Dr. Hunter, and the Santa Rosa legal department containing a "Notice of Health Care Claim." On October 11, 2007, Stevens filed an original petition asserting health care liability claims against Dr. Patel, Santa Rosa, and Team Health. Dr. Patel filed a motion to dismiss pursuant to section 101.106(f) of the Texas Tort Claims Act.[3] In response, Stevens dismissed Dr. Patel and directed her claims against UTHSC.

At the hearing on UTHSC's plea to the jurisdiction and motion to dismiss, the trial court overruled the plea to the jurisdiction holding that, as a matter of law, the government unit had notice under section 101(a) and the mistake was open and obvious. On appeal, UTHSC argues that the trial court erred in finding: (1) UTHSC had formal or actual notice of the claim; and (2) the mistake was open and obvious.

## A. Standard of Review

UTHSC filed a plea to the jurisdiction complaining it did not receive formal or actual notice of Stevens' claims within six months as required under the TCA. A plea to the jurisdiction based on sovereign immunity challenges a trial court's subject matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–26 (Tex. 2004). We review the trial court's ruling on the plea to the

---

[3]    If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.
TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (Vernon 2005).

jurisdiction under a de novo standard of review. *Miranda*, 133 S.W.3d at 228. When reviewing a ruling on a motion to dismiss for lack of jurisdiction, "we accept the allegations in the petition as true and construe them in favor of the pleader." *Bexar County v. Lopez*, 94 S.W.3d 711, 713 (Tex. App.—San Antonio 2002, no pet.). In addition to the pleadings, we may also consider relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the evidence creates a question of fact regarding the jurisdictional issue, the plea to the jurisdiction cannot be granted, and the fact issue is left to be resolved by the fact-finder. *Miranda*, 133 S.W.3d at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard generally mirrors that of a traditional summary judgment. *Id.*; *see* TEX. R. CIV. P. 166a(c).

### B. Notice Requirements of Section 101.101

Under the doctrine of sovereign immunity, a unit of state government, such as UTHSC, is immune from suit and liability unless the State consents to waive its immunity.[4] *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Section 101.101 of the TCA requires a plaintiff to notify a governmental unit of a claim in order to invoke the waiver of sovereign immunity. This notice is a jurisdictional prerequisite. TEX. GOV'T CODE ANN. § 311.034 (Vernon 2005) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). There are two methods of accomplishing notice: formal written notice and actual notice.

---

[4] Chapter 101 of the Tort Claims Act generally waives governmental immunity to the extent its liability arises from the use or misuse of tangible property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2005).

*1. Formal Written Notice*

Section 101.101(a) sets forth the formal notice requirements:

A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
          (1) the damage or injury claimed;
          (2) the time and place of the incident; and
          (3) the incident.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) (Vernon 2005). This formal notice must be submitted in writing. *Cathey v. Booth*, 900 S.W.2d 339, 340 (Tex. 1995).

*2. Actual Notice*

Section 101.101(c) of the TCA provides that formal notice is not required if the governmental unit has actual notice. "The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that the death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(c) (Vernon 2005). "The purpose of [these notice requirements] is to ensure prompt reporting of claims to enable [governmental units] . . . . to gather the information needed to guard against unfounded claims, settle claims, and prepare for trial." *See City of Houston v. Torres*, 621 S.W.2d 588, 591 (Tex. 1981). We are mindful that although actual notice is a fact question when the evidence is disputed, in some instances it can be determined as a matter of law. *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004). We first address UTHSC's complaint that it established conclusively that it did not receive actual notice of Stevens' claims.

## C. Subjective Awareness

In *Cathey v. Booth*, 900 S.W.2d at 340, the Supreme Court explained that to impute actual notice of an injury to a governmental agency, a party must show that the governmental

unit "ha[d] knowledge of (1) a death or injury; (2) its alleged fault in producing or contributing to the injury; and (3) the identity of the parties involved." Following *Cathey*, confusion surrounded the second requirement that addressed the knowledge of fault in producing the injury. In *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d at 347, the Supreme Court clarified that "we did not mean that the governmental unit was required to know that the claimant had actually made an allegation of fault." Rather, "what we intended in *Cathey* by the second requirement for actual notice was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a)." *Id.* at 347. Ultimately, the court held, "[A]ctual notice under section 101.101(c) requires that a governmental unit have knowledge of the information it is entitled to be given under section 101.101(a) and a subjective awareness that its fault produced or contributed to the claimed injury." *Id.* at 348. As the Supreme Court stated, "Governmental entities have actual notice to the extent that a prudent entity could ascertain its potential liability stemming from an incident, either by conducting a further investigation or because of its obvious role in contributing to the incident." *Id.* at 346. The court cautioned, however, that "[i]t is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, . . . ." *Id.* at 347–48. The issue UTHSC focuses on, in regard to actual notice, is whose subjective awareness may be imputed to UTHSC.

UTHSC argues that only one person, Kathy Geoghegan, its Director of Risk Management, was qualified to investigate the Stevens' incident, and thus, only she can impute actual notice to UTHSC.[5] Stevens responds that UTHSC cannot narrowly limit the knowledge of UTHSC by designating their risk manager as the only person capable of imputing knowledge

---

[5] Ms. Geoghegan testified that she is the only person charged to investigate claims, but she has no duty or charge to investigate any pre-claim incidents.

to UTHSC. Stevens points to other representatives including Dr. Courand, UTHSC's Director of the Pediatric Residency program at Santa Rosa and Dr. Patel's supervisor, as representatives whose knowledge of the incident should be imputed to UTHSC.

If an agent or representative receives notice of the incident and had a duty to gather facts and report, actual notice can be imputed to the governmental entity. *See Texas Tech Univ. Health Sci. Ctr. v. Lucero*, 234 S.W.3d 158, 163, 168 (Tex. App.—El Paso 2007, pet. denied). Actual notice is not limited to a particular official or employee of a government entity, such as a director of risk management. *See Dinh v. Harris County Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.) (recognizing that actual notice, not limited to hospital administrator, may be imputed by an agent with duty to gather facts and investigate). To the contrary, in certain situations, hospital employees may have a duty to gather facts and investigate incidents. *Tex. Tech Univ. Health Ctr. v. Apodaca*, 876 S.W.2d 402, 412 (Tex. App.—El Paso 1994, writ denied) (two physicians had a duty to gather facts and investigate the incident). As a practical matter, a governmental entity cannot put on metaphorical blinders and designate only one person in its entire organization through whom actual notice may be imputed when the facts support that there are other representatives who have a duty to gather facts and investigate on behalf of the governmental entity.

We turn to Dr. Courand, an employee of UTHSC, to explore whether his knowledge was sufficient to raise a fact issue of actual notice. UTHSC claims notice to Dr. Courand was insufficient because he had no duty to investigate. Relying on *Davis v. Mathis*, 846 S.W.2d 84, 87–88 (Tex. App.—Dallas 1992, no writ), UTHSC points out that rank-and-file employees—and those who do not have a duty to evaluate, assess, and investigate potential liability for the governmental unit—are not qualified to impute actual notice. UTHSC argues

that the subjective awareness of fault must be appreciated by someone with a duty to investigate. *See, e.g.*, *McDonald v. State*, 936 S.W.2d 734, 737–39 (Tex. App.—Waco 1997, no writ) (giving notice of injury caused by tripping on sidewalk to university café cashier who had no duty to investigate did not give actual notice to university). Alleging that Dr. Courand's duties as head of the residency program were "purely educational," UTHSC argues that because Dr. Courand did not have a specific written duty to evaluate, assess, or investigate the potential liability of UTHSC for legal claims, he cannot impute his knowledge to UTHSC.

However, as Stevens contends, Dr. Courand was no rank-and-file employee—he was Director of the Pediatrics Residency Program for UTHSC. Dr. Courand was the employee of UTHSC in charge of the administration of the entire pediatrics residency program. As such, he supervised and coordinated the pediatric resident physicians at Santa Rosa. Under the terms of the operating agreement between UTHSC Pediatric Residency Program and Santa Rosa, Dr. Courand had administrative, educational, and supervisory responsibility for the residents. This "responsibility includes direct and/or indirect supervision of the resident, ensuring appropriate teaching . . . ." In addition, as program director, Dr. Courand was required to " promptly address issues regarding resident training and supervision." Finally, Dr. Courand had the duty to conduct an investigation and to make a recommendation regarding any problem that a facility had with a resident—"[t]he Program Director agrees to conduct an investigation and make a recommendation to the Facility based upon the findings." The focus of Dr. Courand's role as director of the pediatric residency program at Santa Rosa was the training and supervision of residents. Part of his explicit duty was to investigate problems a facility had with residents. Likewise, implicit in his responsibilities to train and supervise residents was his corollary duty to investigate performance issues. As UTHSC's designated supervisor of a resident in training, we

cannot hold, as a matter of law, that Dr. Courand had no duty to conduct further inquiry and investigation into a resident's admitted medical error. The record supports that he contacted Dr. Patel after the incident, discussed the matter with her, and instructed her to create a detailed case report for presentation.

Dr. Courand testified that he was responsible for supervising Dr. Patel while she was working at Santa Rosa. He discussed the incident with Dr. Patel, including her admission of fault in administering the drug. In response, Dr. Courand suggested conducting a morbidity and mortality conference to explore the mistake and the lessons to be learned. It would be his practice to instruct the resident to review the medical records and prepare a case report including a timeline of key events and participants in the event that he would then review before the presentation. The other participants in the incident, including the other faculty members involved in the case, would be invited.[6] In his deposition, Dr. Courand acknowledged the injection was a mistake. The mistake was the fault of Dr. Patel and the injection of topical medication into the wound was an open and obvious mistake. Dr. Courand had knowledge: (1) of the injury; (2) that Dr. Patel was at fault in administering the drug; and (3) the identity of Stevens. *See Cathey*, 900 S.W.2d at 341. As the supervising director of the residency program, Dr. Courand participated in an investigation into the event and the presentation at the morbidity and mortality conference. Although he was familiar with risk management at UTHSC, having contacted them before on other matters, he did not contact them regarding this incident.

Contrary to UTHSC's argument, both section 101.101(c) and case law interpreting the statute provide that actual notice may be imputed to a governmental unit by someone other than the risk management officer. *Simons*, 140 S.W.3d at 344, 347–48; *Parsons v. Dallas County*, 197 S.W.3d 915, 919 (Tex. App.—Dallas 2006, no pet.) (concluding that the County was

---

[6] He participated in the morbidity and mortality presentation within the first two months after the incident.

subjectively aware of its fault by (1) arranging for the plaintiff to be taken to the hospital by ambulance, (2) the employees' immediate actual knowledge of the inmate's injuries, and (3) the unanchored table's role in the injuries). Because Dr. Courand was an agent of UTHSC with a duty to supervise the residents and investigate problems arising with the residents, he is the type of agent whose knowledge may be imputed to UTHSC. There is some evidence that, through Dr. Courand, UTHSC had knowledge of the injury, its fault in producing the injury, and the identity of the parties involved. The objectives of the notice provision were served; a very detailed case study was prepared, outlining the events and persons involved in the incident. We, therefore, hold there was some evidence to raise a fact issue that the actual notice requirements of *Simons* and *Cathy* were satisfied. *See Simons,* 140 S.W.3d at 347–48; *Cathey*, 900 S.W.2d at 340. Because the issue of actual notice is dispositive, we do not reach the issue of formal notice.

## CONCLUSION

Accordingly, because there is evidence of Dr. Courand's knowledge of the alleged incident, parties involved, and potential fault, the trial court did not err in denying UTHSC's plea to the jurisdiction.[7] Because there is some evidence UTHSC had actual notice under section 101.101(c), Stevens raised a fact issue of a valid waiver of immunity. *See Simons,* 140 S.W.3d at 347–48; *Cathey*, 900 S.W.2d at 340. We, therefore, affirm the judgment of the trial court.

Rebecca Simmons, Justice

---

[7] In its second issue on appeal, UTHSC claims the trial court erred in finding the alleged mistake was open and obvious. UTHSC cites to *Johnson* and the Supreme Court's ruling that an obvious mistake is irrelevant to satisfying the statutory notice requirement. *Johnson*, 103 S.W.3d 639, 642 (Tex. App.—San Antonio 2003, pet. den.). However, the trial court found UTHSC had knowledge under section 101.101(a) and "also had subjective awareness of its fault." Therefore, the argument regarding an open and obvious finding is without merit.