**Reversed and Rendered and Majority and Dissenting Opinions filed May 6, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00605-CV

---

### THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellant

### V.

### TERESA MCQUEEN AND CLARENCE MCQUEEN, JR., Appellees

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-07983**

---

## DISSENTING OPINION

In my view, the University of Texas Health Science Center at Houston ("UTHSCH") failed to prove as a matter of law that it did not receive actual notice, and the McQueens raised a fact issue on actual notice. Accordingly, I would affirm the trial court's denial of the plea to the jurisdiction. Because the majority does not, I respectfully dissent.

### A. UTHSCH did not negate actual notice.

UTHSCH filed a conclusory affidavit by Catherine Thompson, its risk manager. Thompson testified as follows:

> On May 3, 2013. I conducted a search of all appropriate files and records at UTHSCH and made inquiries of the appropriate offices and individuals throughout UTHSCH to determine when UTHSCH first received any type of notice of Plaintiffs', Teresa McQueen and Clarence McQueen, Jr., claims.

> I find no record or information that any written notice or actual notice of a claim pursuant to the Texas Tort Claims Act was ever received from or on behalf of, Teresa McQueen or Clarence McQueen, Jr. by any representative of UTHSCH authorized to investigate such claims, in connection with the allegations that are described in this lawsuit, within six (6) months after the day that the incidents . . . occurred.

While this affidavit might be sufficient to negate formal written notice, it is conclusory as to actual notice and sets out the wrong legal standard for actual notice. The McQueens objected to the conclusory nature of the affidavit, but the record does not reflect that they obtained a ruling. However, because a conclusory affidavit is substantively defective, the failure to obtain a ruling on an objection does not waive a challenge to the defect, and the objection may be considered on appeal. *See Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510, 530 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 883 (Tex. App.—Dallas 2007, no pet.).

The affidavit is conclusory because Thompson did not identify with whom she spoke when determining whether UTHSCH had actual notice. We know that she did not talk to Dr. Schneider, the surgeon involved, because Dr. Schneider was no longer employed with UTHSCH on May 3, 2013. Moreover, the affidavit does not set forth the correct legal standard for actual notice. Actual notice does not

have to be received "from" the McQueens. Nor does actual notice have to be received "on behalf" of the McQueens. Nor does it consist of notice of a claim by the McQueens. I would hold that UTHSCH did not shift the burden of proof to the McQueens through this affidavit.

**B.     The McQueens raised a fact issue on actual notice.**

Even if Thompson's affidavit were sufficient to shift the burden of proof, I believe that the McQueens raised a fact issue on actual notice. This case is almost on all fours with a recent Texas Supreme Court opinion where the court held that there was evidence of actual notice. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544 (Tex. 2010). Consider the following similarities:

| <u>The McQueens</u> | <u>Arancibia</u> |
|---|---|
| • Surgeon performed a laparoscopic hysterectomy. | • Surgeon performed a laparoscopic hernia repair. |
| • Patient returned two days later to ER with severe abdominal pain. | • Patient returned two days later to ER with severe abdominal pain. |
| • Emergency surgery revealed bowel perforation. | • Emergency surgery revealed bowel perforation. |
| • Dr. Schneider surmised injury due to cauterization tools. | • Dr. Watson surmised injury was a retraction injury. |
| | • Dr. Watson reported to "risk mgt." |
| • Dr. Schneider said no standard of care violation. | • Dr. Watson's supervisor said no standard of care violation. |
| • Four other UTHSCH employees were aware of perforation of bowel during hysterectomy. | |

3

The main and obvious distinction between the McQueens' case and *Arancibia* is the report to risk management and the report to a supervisor. Is the report to risk management the defining distinction between the cases? What if UTHSCH policy only requires such a report in death cases such as in *Arancibia*? Is the report to a supervisor the defining distinction? Here, Dr. Schneider was a supervisor herself. In *Arancibia*, the court held that the hospital had actual notice. *Id.* at 550. Because the facts of this case are nearly identical, I would conclude that the McQueens at least raised a fact issue as to actual notice. *See id.* at 549 (actual notice may be a question of fact for the jury to decide); *see also Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 340–41 (Tex. App.—San Antonio 2010, no pet.) (fact issue existed where supervising physician was aware of injury to patient).

I agree with the majority opinion that the central issue in this case is whether the McQueens raised a fact issue on the second prong of actual notice—whether the governmental unit had subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed death, injury, or property damage. *See Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 344–48 (Tex. 2004). "Fault, as it pertains to actual notice, is not synonymous with liability; rather it implies responsibility for the injury claimed." *Arancibia*, 324 S.W.3d at 550. Subjective awareness often will be proved "if at all, by circumstantial evidence." *Simons*, 140 S.W.3d at 348.

Dr. Schneider is an employee of UTHSCH and is the Assistant Residency Program Director. Dr. Schneider did not do an investigation after she was aware of the bowel injury. She was not asked whether or not she reported the injury to anyone else at UTHSCH.

When Mrs. McQueen returned to the emergency room, we know that Dr. Heaps immediately suspected a bowel injury from the hysterectomy. Dr. Heaps prepared a consultant's report. Dr. Heaps reported this to a consulting physician, Dr. Kahn, who then sent Mrs. McQueen to surgery. Dr. Berens began a laparoscopic surgery on Mrs. McQueen and called in Dr. Lawrence when she discovered fecal matter in Mrs. McQueen's abdomen. Dr. Lawrence determined that the bowel injury, a perforation of the colon, occurred during the hysterectomy performed by Dr. Schneider and Dr. Berens. Dr. Lawrence noted no other bowel abnormalities. We do not know whether Dr. Lawrence, Dr. Berens, or Dr. Heaps reported this injury to anyone else or did an investigation.

Lower courts have concluded that actual notice is not limited to only a particular government official such as a director of risk management or a hospital administrator. *See Stevens*, 330 S.W.3d at 339–40; *Dinh v. Harris Cnty. Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.). Should we conclude that a plaintiff has raised a fact issue when numerous doctors within an organization have notice? I would conclude that there was such a fact issue given a doctor's duties generally—and Dr. Schneider's administrative role in particular—subject to rebuttal by UTHSCH. While the majority notes that UTHSCH argued that these doctors had no duty to investigate or report claims, UTHSCH presented no evidence to support that argument.

It is unclear from the majority opinion whether the majority believes that Dr. Schneider did not have notice of fault or whether UTHSCH did not have notice of fault. The majority seems to conclude that all Dr. Schneider knew was that there was a "bad result" with the hysterectomy. I disagree.

Dr. Schneider knew at the time of the hysterectomy that if the cauterization tools touched the colon then necrosis of the colon could occur. She knew at the

5

time of the surgery that there are procedures to follow to prevent that from happening. Although Dr. Schneider claimed to have followed those procedures, the surgical error occurred.

Although Dr. Schneider at first claimed that she did not know what caused the bowel injury, she also testified that the injury was in all likelihood caused by the cauterization tools that either she or Dr. Berens used during the hysterectomy. And although Dr. Schneider denied any liability for using the tools improperly, there is no doubt that she knew that their use of the tools caused the injury. In other words, Dr. Schneider knew that either she or Dr. Berens was responsible for the injury claimed now by Mrs. McQueen, and she actually agrees with one of the two theories of the plaintiff's expert as to how the injury occurred. However, she contends that she was not negligent in using the tools. It is undisputed that the sole instrumentality of the harm was the governmental unit itself. *See Arancibia*, 324 S.W.3d at 550.

Dr. Schneider could not identify any other possible causes of the bowel injury. There were no abnormalities noted of the uterus as it was removed, and no other adhesions were observed. This is important because a pelvic adhesion can sometimes cause a bowel injury. There were no other problems with the bowel noted during the hysterectomy. There was no infection or inflammation pre-existing that could have caused the bowel injury. *Dr. Schneider ruled out all of these other causes of injury*. Simply put, there was no other possible cause of the injury other than actions taken by the surgeons during the hysterectomy.

Just as in *Arancibia*, Dr. Schneider had notice of the injury and the cause of the injury. She had actual notice of fault as defined by *Arancibia*. The trial court's denial of the plea should be affirmed.


/s/    Tracy Christopher
Justice


Panel consists of Justices Boyce, Christopher, and Brown. (Brown, J., majority).