Jason Pulliam, Justice, dissenting.
Review of the undisputed facts in this case reveals there cannot be an issue of fact with regard to whether the City of San Antonio received actual notice of Ms. Tenorio's claims against it. Under the undisputed facts presented, I would hold there is no fact issue whether the City of San Antonio was subjectively aware of its potential fault in causing the accident from which Ms. Tenorio asserts her injuries and damages arose. In fact, the undisputed facts and evidence conclusively establish the City of San Antonio was not subjectively aware of its potential fault in causing the subject accident. For this reason, the trial court lacks jurisdiction, and therefore, the trial court erred by denying the City of San Antonio's plea to the jurisdiction. Because the majority opinion concludes there is a fact issue regarding the City of San Antonio's receipt of actual notice, I must respectfully dissent.
STANDARD OF REVIEW
A plea to the jurisdiction is a dilatory plea which challenges a trial court's authority to determine the subject matter of an asserted cause of action without defeating the merits of the case. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). Appellate review of atrial court's ruling on a jurisdictional plea is conducted in a two-step sequential analysis. Tex. Dep't of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 226-28 (Tex. 2004). First, the issue whether the nonmovant alleged facts sufficient to affirmatively demonstrate subject-matter jurisdiction is a question of law reviewed de novo. Miranda, 133 S.W.3d at 226. For this reason, appellate review begins with the non-movant's pleadings to determine if the alleged facts affirmatively demonstrate the trial court's jurisdiction to hear the cause. See ids="9256802" index="39" url="https://cite.case.law/sw3d/133/217/#p228">id. If the facts as pled are sufficient to demonstrate jurisdiction, then any remaining jurisdictional challenge is to the existence of jurisdictional facts. In this second step, the court may consider facts and evidence even if they pertain to the substantive merits, but must confine such consideration only to those facts that are relevant to the jurisdictional issues raised. Id. (confirming the court's holding in Bland Indep. Sch. Dist., 34 S.W.3d at 555 ).
Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action, and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists, limited to the jurisdictional challenge. Miranda, 133 S.W.3d at 227. Even though the facts pertaining to the merits of the case and subject matter jurisdiction may be intertwined, the court must not determine the case merits. Id. at 227-28. If examination of the evidence relevant to jurisdiction reveals a fact issue with regard to jurisdiction *639 exists, then the plea must be denied and the issue pertaining to jurisdiction must be resolved by the fact finder. Id. ; see also Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens, 330 S.W.3d 335, 338 (Tex.App.-San Antonio 2010, no pet.).
Likewise, if the facts or evidence relevant to jurisdiction are undisputed or fail to raise a fact question on the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law even if the facts or evidence pertain to the substantive merits of the case. Miranda, 133 S.W.3d at 228. In this event, the court may delve into facts and evidence pertaining to the substantive merits because such is undisputed. Id. Determination whether a trial court holds jurisdiction based upon undisputed fact or evidence is reviewed de novo. Id.
ANALYSIS
In the first step of the jurisdictional analysis, Ms. Tenorio plead the City of San Antonio had actual notice of the claims asserted and no exception of the waiver of immunity applies. Therefore, Ms. Tenorio plead sufficient facts to affirmatively demonstrate subject-matter jurisdiction. Thus, jurisdictional analysis proceeds to the second step, in which the jurisdictional challenge is to the existence of jurisdictional facts.See Miranda, 133 S.W.3d at 227-28.
In this second step, the jurisdictional dispute pertains to the issue of the City of San Antonio's actual notice of its alleged fault in producing or contributing to the claimed injury. While determination whether the City of San Antonio received actual notice is a question of fact, this issue may be determined as a matter of law if the evidence is insufficient to raise a fact issue or if the undisputed facts or evidence conclusively shows the City of San Antonio was not subjectively aware of its alleged fault. See ids="9256802" index="50" url="https://cite.case.law/sw3d/133/217/#p228">id. ; Univ. of Texas Sw. Med. Ctr. at Dallas v. Estate of Arancibia ex rel. Vasquez-Arancibia, 324 S.W.3d 544, 549 (Tex. 2010) ; City of Pharr v. Aguillon, No. 13-09-00011-CV, 2010 WL 1138449, at *4 (Tex.App.-Corpus Christi, Mar. 25, 2010, no pet.).
With regard to the facts pertaining to the City of San Antonio's actual notice, it is undisputed that Ms. Tenorio failed to provide statutory notice to the City of San Antonio of her intent to file suit. For this reason, to overcome the City of San Antonio's assertion of governmental immunity, and thus, invoke the trial court's jurisdiction over her claims, Ms. Tenorio was required to prove the City of San Antonio had actual notice of its potential fault in producing or contributing to the subject accident. See City of Dallas v. Carbajal, 324 S.W.3d at 537, 539 (Tex. 2010) ; Tex. Dep't of Criminal Justice v. Simons, 140 S.W.3d 338, 347-48 (Tex. 2004) ; Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). As explained in the majority opinion, to prove the City of San Antonio had actual notice of her claims, Ms. Tenorio must show the City of San Antonio had "subjective awareness of its fault ... in producing or contributing to the claimed injury." See Simons, 140 S.W.3d at 347. Pertinent to this analysis, when records or investigative reports give no indication that a governmental unit is at fault in an incident, the governmental unit has no actual notice, that is, it is not subjectively aware of its alleged fault. See ids="9212456" index="57" url="https://cite.case.law/sw3d/140/338/#p347">id. at 347-48. As explained in the precedential line of Texas Supreme Court cases Cathey, Simons and Carbajal, a governmental unit cannot acquire actual notice even by obtaining information that would reasonably suggest its culpability. See Carbajal, 324 S.W.3d at 539 ; Simons, 140 S.W.3d at 345 ; Cathey, 900 S.W.2d at 341. Instead, to raise a fact issue with regard to the governmental *640 unit's subjective awareness of its potential fault in causing the accident, the evidence must at least imply or provide some indication of fault. See Carbajal, 324 S.W.3d at 539 ; Simons, 140 S.W.3d at 345 ; Cathey, 900 S.W.2d at 341.
Ms. Tenorio contends the City of San Antonio had actual notice of her claims by virtue of (1) the Texas Peace Officer's Crash Report; (2) the written statements of the witnesses; and (3) the SAPD Offense Report concerning the crash in question. Under a de novo review, this court must review this evidence to determine if any raises a fact issue with regard to whether the City of San Antonio had subjective awareness of its alleged fault, or if the undisputed facts conclusively show the City of San Antonio was or was not subjectively aware of its alleged fault. See Miranda, 133 S.W.3d at 227-28 ; Estate of Arancibia, 324 S.W.3d at 549. While such evidence and this factual dispute may touch upon the substantive merits of the litigation, this court may consider such facts and evidence relevant to the jurisdictional challenge if such facts and evidence are undisputed or fail to raise a fact question with regard to the City of San Antonio's subjective awareness. However, this court must confine such consideration only to those facts that are relevant to the jurisdictional issues raised. See Miranda, 133 S.W.3d at 227-28 ; Estate of Arancibia, 324 S.W.3d at 549.
APPLICATION
A review of the documents referenced by Ms. Tenorio reveals there is no fact issue with regard to the City of San Antonio's subjective awareness of its alleged fault. None of the documents assert, imply or present a "subjective signal" to the City of San Antonio of its potential fault, as the majority concludes. These documents do present undisputed facts which conclusively show the City of San Antonio was not subjectively aware of its alleged fault in causing the accident.
The Texas Peace Officer's Crash Report did not indicate or infer any police officer actions to be a contributing factor to the cause of the accident or that any police officer did anything wrong or was at fault in any way in causing the accident. Likewise, the SAPD Offense Report does not indicate or infer any police officer actions to be a contributing factor. None of the eight witness statements implicate fault on any police officer. As held in Carbajal, Simons, and Cathey, to raise a fact issue with regard to the City of San Antonio's subjective awareness of its potential fault in causing the accident, these reports and statements must at least imply or provide some indication of fault, and absent such indication, the City of San Antonio does not have subjective awareness, and thus, there is no actual notice to the City. See Carbajal, 324 S.W.3d at 539 ; Simons, 140 S.W.3d at 345 ; Cathey, 900 S.W.2d at 341.
The turning point upon which the majority bases its conclusion is Box No. 36 of the Texas Peace Officer's Crash Report, labeled "Contributing Factors (Investigator's Opinion)", in which the investigating officer stated, "Fleeing or Evading Police". The majority concludes this statement must implicate fault because "[i]t stands to reason that there can be no fleeing or evading without pursuit or chase by the police." It is at this point that I must differ, as the undisputed facts and the record conclusively establish that the police officers had ceased pursuit of Garza and because established caselaw holds that pursuit alone is insufficient to place the City of San Antonio on actual notice of a potential claim. See Muniz v. Cameron Cnty., No. 13-10-00689-CV, 2012 WL 1656326, at *6 (Tex.App.-Corpus Christi May 10, 2012, pet. denied) (mem.op.).
*641 Witness Statement identified as "Exhibit B" to the plea to the jurisdiction, states, "[i]t seemed like the cop lights were stopped. Then I saw the light colored car coming toward us in the fast lane." Witness Statement identified as "Exhibit D" states, "As I was driving east, I saw police cars coming towards me with their lights on.... that's when I seen they were chasing a small silver car.... When the silver car got on the highway, by driving the wrong way on the exit ramp, the police cars turned around and took the turn around, so they could go the correct way and keep chasing the silver car." "Exhibit E" witness statement states, "The gold car then entered the 410 south mainlanes using the exit ramp from 410 north. It looked like the cop cars wanted to enter the highway the wrong way too but didn't. We continued northbound on the access road and approached the scene of the accident.... The gold car was the one who caused everything." "Exhibit F" witness statement states, "[t]he police cars chased the small car through the parking lot of the Shell and then the small car exited the parking lot and drove onto the exit ramp of 410 and entered the south bound lanes of 410 but was traveling north bound against traffic. When the car entered the highway, going the wrong way, I observed that the police cars stopped and did not pursue the small car onto the highway." "Exhibit H" witness statement states, "[p]rior to the accident I did not see police cars chasing this vehicle, nor did I see any police vehicles in that lane or on this side of the highway. The only time I saw police officers was after the accident had occurred and that was the officers that had pulled up on the opposite side of the highway...." "Exhibit I" witness statement states, "I didn't see any cop cars chasing the small silver car and only seen them after the accident. I did not see the driver of the small silver vehicle that caused the accident." The statement from Officer Nathan Zachary, one of the officers in pursuit of Garza, states,
I followed behind him as he cut through the parking lot. The driver then turned left, south, onto a dirt road that runs parallel to the northbound access road of Loop 410. I continued to follow behind him because I thought he was going to drive into the wooded area along Loop 410. I heard Off Reygadas on the police radio saying to back off the vehicle.... The driver entered Loop 410 from the exit ramp traveling the opposite direction of traffic. When the vehicle veered off the dirt road and onto the exit ramp Off Reygadas came on the radio saying to terminate the pursuit. I stopped on the dirt road. When I stopped the pursuit the suspect vehicle was already on Loop 410....
Finally, the statement from Officer Manuel Reygadas, another officer in pursuit of Garza states,
[w]e continued to travel south bound on the dirt road for a short distance of approximately forty to fifty yards at which time I got on the radio and advised Officer Zachary to back off as I believed that the suspect was going to try to bail out of the vehicle into the wooded area that was near by.... Just after I made this broadcast, the suspect cut across the access road and entered the exit ramp of Pearsall Rd for north bound Loop 410. As the suspect committed himself to traveling the wrong way on 410 I immediately broadcasted repeatedly over the radio for all officers to cancel and terminate.... The suspect after entering the highway traveled approximately 300 feet prior to the first collision occurring."
The San Antonio Police Department Report, written by Officer Joe Carmona, confirmed *642 the statements of Officers Zachary and Reygadas and states,
[O]nce myself and other officers secured the scene, victims, and witnesses [at the scene of the originating crime], I discovered the V3 was killed in the accident that API caused while he was evading the police. API also severely injured V4.... Apparently while API was operating the listed vehicle, he was traveling south bound in the north bound lanes of SW Loop 410. As he was fleeing the police he jumped onto the main lanes and stuck V3 and V4...."
These reports and witness statements consistently and conclusively establish that the police pursuit of Garza had ceased by the time he entered the exit ramp and by the time he struck the motorcycle carrying the Tenorios. Officers Zachary and Reygadas's reports both establish conclusively that the order to terminate the pursuit occurred before Garza drove up the exit ramp and before he entered the highway going the wrong direction. This evidence is undisputed. Therefore, there can be no fact issue with regard to whether the pursuit of Garza implicated the City of San Antonio or should have made the City of San Antonio subjectively aware of its potential fault because the undisputed evidence conclusively establishes the pursuit of Garza had ceased.
Next, the San Antonio Police Report written by Officer Carmona and Officer Zachary's statement conclusively establish that Garza was already in flight from the original scene of an alleged armed burglary when Officer Carmona and Officer Zachary began pursuit. This evidence is undisputed. Because Garza was already in flight when the police pursuit began, his flight or evasion of police pursuit cannot raise a fact issue whether the City of San Antonio was subjectively aware of its potential fault. This undisputed evidence establishes conclusively that the City of San Antonio did not cause Garza to flee.
Finally, Officer Reygadas's report establishes conclusively that he made the order to terminate pursuit based upon safety concerns when Garza entered the exit ramp. This evidence is undisputed and provides indication of Officer Reygadas's perception of the events as they were unfolding and his perception of the potential implication of the officers' action. Officer Reygadas exercised this judgment by commanding all police officers to cease pursuit. Because the police officers acted according to Officer Reygadas's command to terminate the pursuit, the police officers' actions in stopping the pursuit, and instead, taking the turnaround, exemplifies that the police officers acted prudently to ensure the safety of the public and themselves. Thus, the undisputed evidence conclusively establishes the police officers acted with prudence based upon safety concerns, and therefore, do not raise a fact issue whether the City of San Antonio was subjectively aware of its potential fault.
For these reasons, the statement in the Peace Officer's Report that the cause of the accident was Garza's "Fleeing or Evading Police" is not sufficient to raise a fact issue whether the City of San Antonio was subjectively aware of any alleged fault in causing or contributing to the accident. In fact, these statements and the Reports conclusively establish the City of San Antonio was not subjectively aware of its potential fault.[1]
*643 Aside from this conclusive undisputed evidence, this court cannot conclude a fact issue exists with regard to subjective awareness based upon police pursuit, alone. See Muniz v. Cameron Cnty. , 2012 WL 1656326, at *6. Thus, as a matter of law, the majority opinion cannot hold that Garza's flight or evasion of police pursuit was sufficient to raise a fact issue of the City of San Antonio's subjective awareness. See ion index="73" url="https://cite.case.law/citations/?q=2012%20WL%201656326">id.
Finally, the majority's conclusion in this case, that an indication of flight or evasion of police is sufficient to implicate fault because "[i]t stands to reason that there can be no fleeing or evading without pursuit or chase by the police," results in a bright-line determination that subjective awareness must be implied any time there is a high speed pursuit that results in an accident. This holding promotes a result that is outside the guidelines provided in the Cathey, Simons, and Carbajal precedential authority because it allows a presumptive conclusion with regard to subjective awareness and goes against the purpose of the statutory notice requirement. See Carbajal, 324 S.W.3d at 539 ; Simons, 140 S.W.3d at 345 ; Cathey, 900 S.W.2d at 341.
CONCLUSION
In this case, the record shows conclusively that the City of San Antonio was not subjectively aware of its alleged fault in causing or contributing to the accident from which Ms. Tenorio derives her claims. Therefore, as a matter of law, Ms. Tenorio did not comply with the prerequisite notice requirements of Section 101.101 of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.101 (West 2011). Failure to comply with the notice requirements deprives the trial court of jurisdiction. TEX. GOV'T CODE ANN. § 311.034 (West 2013). Following this analysis under the undisputed facts presented, I would reverse the trial court's order denying the City of San Antonio's plea to the jurisdiction and render judgment dismissing the cause for want of subject matter jurisdiction.

While determination of the City of San Antonio's subjective awareness is intertwined with the facts pertaining to the substantive merits of the liability question, this finding does not affirmatively determine the issue of the City of San Antonio's liability or potential negligence. This court's review is limited to determination of the City of San Antonio's subjective awareness. Therefore, this court may review these facts and evidence for this limited purpose and in this limited context, without deciding the substantive merits of the ultimate litigation. See Miranda, 133 S.W.3d at 227-28 ; Estate of Arancibia, 324 S.W.3d at 549.