# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00575-CV

---

**The University of Texas Southwestern Medical Center, Appellant**

**v.**

**Cindy Matias, Individually and as Representative of The Estate of Sindy Ivery, Deceased Minor, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-000144, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This interlocutory appeal involves the Texas Tort Claims Act's actual-notice exception. *See* Tex. Civ. Prac. & Rem. Code § 101.101(c). Appellee Cindy Matias, individually and as representative of the Estate of Sindy Ivery (Matias), sued the University of Texas Southwestern Health Systems d/b/a the University of Texas Southwestern Medical Center (UT Southwestern). UT Southwestern filed a combined motion to dismiss, plea to the jurisdiction, and hybrid motion for summary judgment alleging that Matias failed to provide timely notice of claims required by section 101.101 of the Texas Tort Claims Act (TTCA) and that, as a result, Matias's claims are barred by governmental immunity. In a consolidated issue on appeal, UT Southwestern contends that the trial court erred in concluding that a genuine issue of material fact existed concerning whether it had actual notice of Matias's claims. We affirm.

## BACKGROUND

Medical records from Dell Children's Medical Center of Central Texas (Dell Children's) reflect that Cindy Matias's daughter, Sindy Ivery, was born prematurely at 32 weeks in October 2016, weighing 1.5 kilograms. Sindy had a prenatal diagnosis of congenital heart disease that included complex single ventricle physiology comprised of tricuspid atresia, transposition of the great arteries, and ventricular septal defect. This diagnosis meant that Sindy's heart was unable to properly circulate oxygenated blood on its own, and Sindy had to undergo pediatric cardiothoracic surgeries to repair the condition.

After her birth, Sindy was transferred from Seton Medical Center's neonatal intensive care unit to Dell Children's Medical Center of Central Texas (Dell Children's) Pediatric Intensive Care Unit (PICU), where Camille Hancock Friesen, M.D., an employee of UT Southwestern, performed the first surgical cardiothoracic procedure on January 9, 2017.[1] Dr. Hancock Friesen testified by affidavit that a number of issues arose during the first surgery that prevented Sindy's heart from circulating oxygenated blood to the rest of her body. Dr. Hancock Friesen averred that these conditions required Sindy to be placed on venoarterial extracorporeal membrane oxygenation (ECMO) life support, an external device that functioned as the heart and lungs, and returned to Dell Children's PICU.[2] Dell Children's medical records reflect that Sindy experienced complications and underwent additional surgical procedures on January 14 and 15, 2017, but she was ultimately not able to be removed from ECMO support.

---

[1] Dr. Hancock Friesen testified by affidavit that she held the positions of professor at UT Southwestern and Medical Director of Dell Children's Pediatric Cardiovascular Surgery when she treated Sindy in January 2017.

[2] Dr. Hancock Friesen testified during her deposition that ECMO is the "most support that a human can be maintained on."

Dr. Hancock Friesen testified by affidavit that, during the last surgery on January 17, 2017, Sindy was successfully weaned from ECMO support, but only for a short time before she suffered complications. Dr. Hancock Friesen averred that she returned Sindy to ECMO support by inserting a new central aortic arterial cannula into Sindy's aorta and suturing it in place.[3] Dr. Hancock Friesen swore that she completed surgery and transferred Sindy's care to the Dell Children's PICU physicians after midnight on January 18, 2017.

Dr. Hancock Friesen testified by affidavit that when she returned home, she texted Dr. Meadows in the Dell Children's PICU, who reported that Sindy's condition was improving. Dell Children's medical records reflect that a few hours later, medical staff discovered that Sindy had an esophageal intubation and Sindy was extubated. Attempts to reintubate Sindy failed, and Sindy suffered face and throat swelling. Dr. Hancock Friesen testified by affidavit that no one from Dell Children's PICU contacted her concerning Sindy's condition until she called the Dell Children's PICU at 6:30 a.m. that same morning and learned that medical staff experienced difficulty with Sindy's airway during the night. Dr. Hancock Friesen averred that she proceeded to the hospital immediately.

Dr. Hancock Friesen testified by affidavit that, when she arrived at the hospital, she re-secured the cannula; however, subsequent radiological tests revealed that Sindy suffered bleeding in her brain and she would not survive. Dell Children's medical records reflect that ECMO support was withdrawn and Sindy died later that day.

A Dell Children's discharge summary, signed by Alexandra K. Wilson, M.D., on February 15, 2017, noted that on January 18, the "CV surgeon was summoned due to [] concerns

---

[3] A cannula is a "tube used for insertion into a blood vessel or the heart." 139 Am. Jur. Proof of Facts 3d 327, Cardiology Terms & Abbreviations § 9 (2014).

3

about misplacement of the aortic cannula" and the "arterial cannula was found to be displaced with preferential blood flow to [Sindy's] head and neck . . . ." On January 19, 2017, Dell Children's Department of Pathology performed an autopsy on Sindy, and the autopsy report was completed a month later. Among other injuries, the autopsy report noted the presence of a massive left cortical hemorrhage, cardiogenic shock with multi-organ failure, and myocardial infarction in the left ventricle apex that likely manifested after injury to Sindy's central nervous system. The autopsy report also noted that Sindy's prolonged requirement for ECMO cardio-respiratory support contributed to her death.

On February 28, 2017, Dr. Hancock Friesen met with Sindy's family to review the autopsy report. James Ivery, Sindy's father, testified by deposition that he had an individual "pre-meeting" with Dr. Hancock Friesen prior to the family meeting, where Dr. Hancock Friesen purportedly questioned whether the placement of the cannula was proper or if she made the tube too short. During his deposition, Ivery testified that Dr. Hancock Friesen never stated that she caused Sindy's injuries, but she recognized that she may have made a mistake. Dr. Hancock Friesen testified by affidavit that, during the family meeting, neither James Ivery nor Cindy Matias expressed any complaints about the quality of care she provided to Sindy.

On May 18, 2018, Dr. Hancock Friesen received a notice of claim letter from Matias's counsel, dated May 15, 2018, asserting that Dr. Hancock Friesen was liable for medical negligence in the care of Sindy. Dr. Hancock Friesen swore in her affidavit that, prior to receiving this letter, she had no reason to believe that Sindy's parents had complaints about her treatment of Sindy. Dr. Hancock Friesen averred that, prior to receiving the notice of claim letter, she did not report or discuss with her supervisors or risk management at UT Southwestern any errors concerning her medical care of Sindy.

4

Dr. Hancock Friesen testified by affidavit that, after Sindy died, she evaluated the care she provided Sindy, including the placement of the cannula, and believed she properly placed and secured it. Dr. Hancock Friesen also did not believe that she was responsible for any lack of communication between herself and the Dell Children's PICU medical staff on January 18, because she was not at the hospital when the issues with Sindy's ECMO support arose.

In January 2019, Matias sued UT Southwestern. In the original petition, Matias alleged that during the ECMO procedure, where Dr. Hancock Friesen "may have provided assistance in the placing of the arterial cannula," "a needle [was] inserted in the wrong direction." Matias claimed that the "misdirection of the needle" caused Sindy's "face to swell because of the misdirection of the blood flow," resulting in serious brain injuries and Sindy's death. Matias contended that an attending doctor admitted the cause of Sindy's injuries to Cindy Matias, and those causes were confirmed in Sindy's discharge summary, which stated that the aortic cannula was displaced with preferential blood flow to the head, causing serious brain injuries and Sindy's eventual death.

Matias alleged that UT Southwestern was liable for personal injuries based on its employee Dr. Hancock Friesen being negligent by:

1. Failing to exercise reasonable care in the care and treatment of Sindy's condition;

2. Failing to provide the medical care reasonably required for Sindy's condition;

3. Failing to properly monitor Sindy's condition;

4. Failing to ensure that Sindy's aortic cannula was inserted in the proper direction.

Matias also filed the expert report of Patricia Penkoske, M.D., to support its allegations.

5

UT Southwestern subsequently "move[d] for [] dismissal as a plea to the jurisdiction and via traditional and no-evidence motions for summary judgment," arguing that Matias failed to provide pre-suit notice of claims required by TTCA section 101.101. UT Southwestern argued that the trial court lacked jurisdiction over Matias's claims because Matias did not provide six months' notice—formal or actual—of the specific claims as required by Texas Civil Practice and Remedies Code Subsections 101.101(a) and (c). UT Southwestern alleged that Matias failed to provide timely formal notice because the incident occurred on January 18, 2017, and it first received written notice of Matias's claims on May 18, 2018, when Dr. Hancock Friesen received the notice of claim letter. UT Southwestern contended that the record reflected that it also lacked actual notice of Matias's specific claims.

To support its motion, UT Southwestern submitted evidence that included: (1) the Dell Children's discharge summary, signed by Dr. Wilson; (2) Dr. Hancock Friesen's affidavit and deposition excerpts; (3) Dell Children's Bylaws & Rules; (4) the Dell Children's autopsy report for Sindy; (5) deposition excerpts of James Ivery and Cindy Matias; (6) a Dell Children's PICU progress note; (7) affidavit testimony of the Assistant Director of Medical Risk Management in the Office of Vice President for Legal Affairs at UT Southwestern, who swore that based on her review of records, UT Southwestern Medical Risk Management did not have formal or actual notice of Matias's claims until May 18, 2018; and (8) the report of UT Southwestern's designated expert, Andrew Lodge, M.D., who opined that "it is possible that the arterial cannula position contributed to the intracranial hemorrhage in this baby with pre-existing ischemic brain injury," but "whether or not this was the case cannot be determined for certain."[4]

---

[4] Dr. Lodge opined that Sindy's cannulation for ECMO on January 17 was a technically difficult procedure for several reasons and the records indicated that the cannula was positioned and secured in the operating room and functioned at that time. Dr. Lodge concluded that because

Matias responded that it was undisputed that UT Southwestern had actual knowledge of Sindy's death and the identity of the parties involved through its employee-surgeon, Dr. Hancock Friesen, who testified by affidavit and during her deposition that she reviewed the entire course of care that Sindy was provided. Matias argued that UT Southwestern had timely subjective awareness of fault because the deposition testimony of James Ivery and expert report of Dr. Penkoske established, at a minimum, a fact question as to whether Dr. Hancock Friesen should have anticipated her actions would have resulted in the claims. In addition, UT Southwestern medical records reflected that there were concerns that the aortic cannula had been misplaced. Lastly, Matias argued that Dr. Hancock Friesen did not dispute that she had supervisory authority over staff at Dell Children's, and that she had in place a system where she should be promptly notified if issues arose in caring for Sindy. Matias submitted with its response evidence including: (1) deposition excerpts of James Ivery; (2) the report of Dr. Penkoske; and (3) the Dell Children's discharge summary.

After considering the pleadings, the arguments of counsel, and the record, the trial court entered an order that denied UT Southwestern's combined plea to the jurisdiction, motion to dismiss, and traditional and no-evidence motions for summary judgment. In a consolidated issue on appeal, UT Southwestern contends that the trial court erred in denying the plea and motions.

## DISCUSSION

UT Southwestern argues that it is entitled to governmental immunity from suit because it did not receive timely formal or actual notice of Matias's claims as required by the TTCA. *See* Tex. Civ. Prac. & Rem. Code § 101.101(a), (c). UT Southwestern contends that,

Sindy was born with complex congenital heart disease and risk factors for poor outcome, her death was not the result of a violation of standard of care by Dr. Hancock Friesen.

7

absent a valid waiver of statutory immunity, the trial court lacked subject-matter jurisdiction over Matias's claims, and the trial court erred by denying its dispositive motions. *See City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018).

The Texas Tort Claims Act creates a limited waiver of immunity for claims of personal injury or death but requires prompt notice of a claim. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 59 (Tex. 2019) (citing Tex. Civ. Prac. & Rem. Code §§ 101.025, .101). As a jurisdictional prerequisite to suit against a governmental unit, section 101.101 of the TTCA requires that the claimant provide either formal or actual notice of a claim within six months of the incident giving rise to the claim:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> > (1) the damage or injury claimed;
> >
> > (2) the time and place of the incident; and
> >
> > (3) the incident . . .
>
> (c) The notice requirements provided . . . by [Subsection (a)] do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

Tex. Civ. Prac. & Rem. Code § 101.101; *Worsdale*, 578 S.W.3d at 62.

The jurisdictional issue in this case focuses on whether UT Southwestern had actual notice under section 101.101(c) rather than formal notice under subsection (a). A governmental unit has actual notice under the TTCA if it has subjective knowledge of (1) a death or injury; (2) the governmental unit's alleged fault in producing or contributing to the death or injury; and (3) the identity of the parties involved. *Reyes v. Jefferson County*, 601 S.W.3d 795, 797–98 (Tex. 2020) (per curiam) (quoting *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)). The actual-notice

8

standard requires evidence that the governmental unit was "subjectively aware that its alleged acts or omissions contributed or produced injuries in the way the claimant alleged." *Worsdale*, 578 S.W.3d at 64; *see University of Tex. Sw. Med. Ctr. v. Estate of Arancibia*, 324 S.W.3d 544, 548–49 (Tex. 2010) (explaining that actual notice must provide government unit same notice entitled by formal notice). However, confession of fault or actual liability is not required to constitute subjective awareness under the actual-notice standard. *See Reyes*, 601 S.W.3d at 798.

The plaintiff has the burden to demonstrate a trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). A governmental unit may assert a jurisdictional challenge premised on immunity through various procedural vehicles, including a plea to the jurisdiction or motion for summary judgment. *Id.* We review de novo whether the trial court lacked jurisdiction due to governmental immunity. *See Worsdale*, 578 S.W.3d at 66 (explaining that notice is prerequisite to subject-matter jurisdiction and question of law reviewed de novo); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

A party is entitled to summary judgment on traditional grounds if the evidence establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). If a governmental unit meets this initial burden to establish that the trial court lacks jurisdiction, then the burden shifts to the nonmovant to raise a fact issue concerning jurisdiction. *Miranda*, 133 S.W.3d at 228. If a fact issue exists, summary judgment must be denied. *Id.* at 227–28. In a no-evidence motion for summary judgment, the movant contends that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden at trial. *See* Tex. R. Civ. P. 166a(i). The court must grant the motion unless the nonmovant raises a genuine issue of material fact on each challenged element. *Id.* The nonmovant raises a genuine issue of material fact by

9

producing "more than a scintilla of evidence establishing the existence of the challenged element." *Swanson*, 590 S.W.3d at 551 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). When considering a jurisdictional challenge, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). "For both traditional and no-evidence motions, the court views the evidence in the light most favorable to the nonmovant." *Swanson*, 590 S.W.3d at 551; *Miranda*, 133 S.W.3d at 228 (explaining that all evidence is reviewed in light most favorable to nonmovant to determine whether genuine issue of material fact exists).

Whether a governmental unit had actual notice is a fact question when the evidence is disputed and a question of law when the evidence is undisputed. *Tenorio*, 543 S.W.3d at 776. "When a jurisdictional fact issue is intertwined with the merits, the court cannot grant the plea, but when the jurisdictional issue is not intertwined with the merits, we must defer to the trial court's express or implied factual determinations that are supported by sufficient evidence." *Worsdale*, 578 S.W.3d at 66.

Matias's pleadings assert that the evidence establishes that UT Southwestern had subjective awareness of fault, as ultimately alleged by Matias, in producing or contributing to the claimed injuries to Sindy within six months of the incident. *See Worsdale*, 578 S.W.3d at 65. Specifically, the original petition asserts that "the cause of the injuries to Sindy" was "confirmed in writing within [Sindy's] discharge summary paperwork," and quotes the Dell Children's discharge summary:

> CV surgeon was summoned due to concerns about the misplacement of the aortic cannula due to the high inflow pressure and inability to provide ECMO support. The arterial cannula was found to be displaced with preferential blood flow to the head and neck and it was re-secured in the proper position. After re-securing the cannula, a repeat head ultrasound is performed, with the results being concerning

10

due to a possible infarction on the left side. Sindy is taken for a CT scan, which shows a massive hemorrhagic left-sided infarct with mass effect.

Attached to the original petition, Matias submitted the Dell Children's discharge summary, which reflected that there were high inflow pressures on Sindy's ECMO circuit when she arrived to the PICU around midnight on January 18, and this continued into early morning. The discharge summary noted that attempts by medical staff to reintubate Sindy during the night failed due to massive swelling of Sindy's face, neck, and airway. The discharge summary also noted that Dr. Hancock Friesen was not summoned until the morning of January 18, due to concerns about the misplacement of the aortic cannula when Sindy was not able to maintain cardiac output on ECMO. The original petition cites that the autopsy report confirmed a "massive left hemispheric hemorrhage with organizing hematoma and global hypoxic/ischemic encephalopathy."

Dr. Hancock Friesen testified by affidavit that, after the incident, she evaluated and reviewed the entire course of care Sindy was provided, which was her standard practice. Dr. Hancock Friesen specifically reviewed the placement of the aortic cannula and her lack of communication with the Dell Children's PICU on January 18. *See Reyes*, 601 S.W.3d at 798 (instructing that actual notice does not require proof that governmental unit believed it was liable but only subjective awareness of its fault as alleged by claimant). Dr. Hancock Friesen also reviewed the autopsy report with Sindy's family on February 28, 2017. *See University of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 341 (Tex. App.—San Antonio 2010, no pet.) (concluding that trial court did not err in denying governmental unit's plea to jurisdiction because evidence was sufficient to raise fact issue that hospital had actual notice of claim through physician's knowledge). James Ivery testified by deposition that, during the pre-meeting on February 28, Dr. Hancock Friesen questioned if the placement of the cannula was proper, if she made the tube too short, or if the tube was moving. Ivery testified that, during the family meeting

11

to review the autopsy report, Dr. Hancock Friesen again stated that the cannula was "I guess just too short or just aimed wrong," and her demeanor purportedly appeared as if she doubted that she "did it correctly." Dr. Hancock Friesen testified that the placement of the cannula was confirmed by echocardiogram in consultation with Dell Children's cardiologists and by x-ray. This evidence creates an issue of fact concerning whether UT Southwestern was subjectively aware that its alleged acts produced or contributed to Sindy's injuries. *See Worsdale*, 578 S.W.3d at 66.

Viewing the evidence in the light most favorable to Matias, we conclude that Matias has produced more than a scintilla of evidence to establish a genuine issue of material fact as to whether UT Southwestern had actual notice of Matias's claims under section 101.101(c). *See* Tex. R. Civ. P. 166a(c), (i); *Swanson*, 590 S.W.3d at 551; *Miranda*, 133 S.W.3d at 228. Because material fact issues remain concerning Matias's claims, the trial court did not err in denying the plea to the jurisdiction, motion to dismiss, and no-evidence and tradition motions for summary judgment. *See Miranda*, 133 S.W.3d at 227–28. We overrule UT Southwestern's consolidated issue on appeal.

## CONCLUSION

We affirm the trial court's order denying UT Southwestern's plea to the jurisdiction, motion to dismiss, and no-evidence and traditional motions for summary judgment.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:  November 30, 2023