

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00193-CV

_____

UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER A/K/A
UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT
WORTH HEALTH SYSTEMS, Appellant

V.

ROBYN WALTON, Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-290069-17

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant University of North Texas Health Science Center a/k/a University of North Texas Health Science Center at Fort Worth Health Systems (UNTHSC) appeals from the trial court's denial of its plea to the jurisdiction alleging that Appellee Robyn Walton did not provide the required statutory notice of her claim under Texas Civil Practice and Remedies Code Section 101.101. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101. UNTHSC argues in two issues that the trial court erred by denying the plea to the jurisdiction because Walton (1) failed to provide UNTHSC with timely written notice of her claim and (2) failed to establish UNTHSC had actual notice of her claim.

## Background

### A. Procedural

Walton sued UNTHSC for medical malpractice. In her petition, she alleged the following facts related to her care at UNTHSC. In March 2015, she sought treatment at UNTHSC for upper thoracic syndrome and thoracic outlet syndrome (TOS). On May 14, 2015, UNTHSC's Dr. Albert Henry Yurvati performed thoracic outlet surgery on Walton to treat her TOS. However, instead of partially excising her right first rib—the standard of care for TOS—he partially excised the right second rib. Walton continued to receive TOS treatment at UNTHSC through October 1, 2015. When Walton's treatment at UNTHSC failed to relieve her symptoms, she sought treatment from another doctor outside of UNTHSC who, in December 2015,

performed thoracic outlet surgery to resect her first rib. That doctor also allegedly removed "recurrent extensive and dense adhesions and scar tissue secondary to the May 14, 2015, partial removal of a portion of the wrong rib by Dr. Yurvati."

Walton sued UNTHSC on January 19, 2017. She alleged that Dr. Yurvati and UNTHSC health care employees were negligent by (1) failing to properly treat her upper thoracic syndrome and TOS; (2) misusing the surgeon's scalpel and instruments during the May 14, 2015 surgery; (3) negligently failing to perform the proper surgical procedure to address her TOS; and (4) negligently failing to refer Walton to a surgeon who was skilled and qualified in addressing her conditions. She also asserted that she had provided presuit notice of her claim. UNTHSC filed its answer, including a plea to the jurisdiction, and a motion to dismiss asserting that Walton had failed to provide it with notice of her claim within six months of her May 14, 2015 injury, as required by statute.

Walton filed an amended original petition and a response to the plea to the jurisdiction. In her amended petition, she added allegations that UNTHSC employees continued to unsuccessfully treat her conditions after her initial surgery until October 29, 2015. In her response to the plea to the jurisdiction, she argued that the date on which the statutory notice requirement began was October 29, 2015, the last date of UNTHSC's ineffective course of TOS treatments. She argued that the statute called for notice no later than six months from the day that the "incident giving rise to the claim occurred" and that the incident in the case "is clearly UNTHSC's failure to

3

properly treat [Walton's] TOS from March of 2015 to October 29, 2015." She maintained that from March through October 2015, UNTHSC treated her TOS "with trigger point injections, osteopathic manipulation, physical therapy, percussive hammer treatments, surgical treatment, and prescription medications," that UNTHSC's treatment "in its entirety" caused her further damage and injury, and that the "incident giving rise to the claim" was therefore the entirety of the TOS treatment that UNTHSC provided to her through October 29, 2015. She further asserted that she gave UNTHSC actual notice of the claim in October 2015 when she told UNTHSC's Dr. William Crow that the wrong rib had been resected, and she argued that Dr. Crow's notation of "H/O resection of rib" in the "Problem List" section of her medical records confirms that she told Dr. Crow of the surgical error.

UNTHSC filed a reply to Walton's response, arguing that the "course of treatment" provision in Texas Civil Practice and Remedies Code Section 74.251 did not apply, that Walton had not complied with Section 101.101 of the Texas Tort Claims Act, and that UNTHSC did not receive actual notice of her claim.

The trial court denied UNTHSC's plea to the jurisdiction after a hearing. UNTHSC now appeals.

## B. Evidentiary

Walton sought treatment from Dr. Yurvati, a thoracic surgeon affiliated with UNTHSC, on March 23, 2015, for complaints of deep venous thrombosis and TOS in her upper right arm. After Dr. Yurvati took a history from Walton and conducted

4

a physical examination, he provided her with education on her deep venous thrombosis and advised that she might need surgical resection of her first rib in May. Ultimately, the decision was made to perform a thoracic outlet surgery with possible resection of her right first rib, which Dr. Yurvati supposedly performed at Plaza Medical Center of Fort Worth on May 14, 2015. The record does not reflect the association, if any, between Plaza Medical Center, its employees, and UNTHSC. Dr. Yurvati's last treatment of Walton was on June 17, 2015.

After surgery, Walton continued to have signs and symptoms of TOS as well as other musculoskeletal complaints. The records from UNTHSC reflect the dates that Walton sought and obtained treatment postoperatively for these TOS complaints. None of these records prior to October 29, 2015, contain any reference to any complaints about wrong level rib surgery by Dr. Yurvati or improper care by other UNTHSC employees.

Walton returned to UNTHSC on October 29, 2015, for ongoing treatment of the TOS problems and saw Dr. Crow. In her affidavit, Walton claimed that she first learned of the resection of her right second rib on October 23, 2015, when her chiropractor showed it to her on an x-ray he had performed two days earlier. She testified that she then saw Dr. Crow on October 29, 2015, and reported to him that her first rib surgery had been done at the wrong level and "that all the injections, therapy, and manipulation had only made my thoracic outlet problems worse." She further stated that Dr. Crow listened to her but did not respond to her statement.

5

The UNTHSC medical records from October 29, 2015, make no reference to any complaint by Walton about her postsurgical care, about discovering that her surgery was on the second rib and not the first, that she had seen a chiropractor for her problem or that her injections, therapy, and manipulations had made her TOS worse. It does reference a history of a rib resection, an uncontroverted fact, but it makes no reference to any specific rib. However, the record of that date for her osteopathic manipulative treatment reflects that "Rib 1" is absent, which was perfectly consistent with the history of her prior TOS surgery.

Walton returned to UNTHSC for TOS follow up on November 30, 2015. She was seen by Dr. Sajid Surve. With respect to the rib surgery, his note reflects: "She states that she got an xray at her chiropractor's office this month that showed they removed her second rib, not her first rib. She is having surgery on Wednesday to have her first rib removed." It also notes a history of rib resection without reference to which rib. There is no complaint recorded about any improper follow-up care between Dr. Yurvati's May 14 surgery and this visit.

Finally, she returned to see Dr. Surve at UNTHSC for TOS follow up on January 15, 2016. Regarding her TOS issue, her recorded history states:

> pt had surgery on 12/2/15 and had her 1st rib removed and two scalene muscles were removed as well. Removed scar tissue on her brachial plexus. Surgeon is worried because her spine is twisted. Her ring finger on the R hand isn't working.
>
> Had surgery for thoracic outlet syndrome in May 2015 without relief. Started OMT in June 2015. The pt reports that [she] started

6

> seeing a chiropractor, who then ordered an Xray, which revealed that her right second rib was mistakenly removed instead of her first rib. She then had another surgery (scar tissue removal, scalenectomy, pec minor release, and first rib removal) in Dec 2015. She is experiencing severe sternal pain.

There is no reference to any complaints about improper care at UNTHSC between her May 14 surgery and January 15, 2016.

Walton filed suit on January 19, 2017. The only presuit written notice of claim was given by plaintiff's counsel on February 15, 2016, in a letter addressed to Dr. Yurvati personally, but not in any representative capacity for UNTHSC. The letter puts Dr. Yurvati on notice of a health care liability claim being made by Walton against him arising from negligent medical care she received from him on or about May 14, 2015. It references that the claim is being made pursuant to Section 74.051 of the Texas Civil Practice and Remedies Code (a health care liability claim) for serious and permanent injuries arising from Dr. Yurvati's negligent acts and/or omissions. The letter never mentions notice of a claim against Dr. Yurvati for acts or omissions of others or for acts or omissions of Dr. Yurvati occurring at any time other than on or about May 14, 2015 (the date of the alleged improper surgery). The letter also never mentions notice of any claim under Section 101.101 of the Texas Civil Practice and Remedies Code (the Texas Tort Claims Act, or TTCA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101. It is uncontroverted that Walton never provided any presuit written notice of her claim directly to UNTHSC, which is a state governmental entity. It is also uncontroverted that Dr. Yurvati, Dr. Crow, and Dr.

Surve were physicians associated with UNTHSC. Dr. Yurvati, besides being an employee surgeon of UNTHSC, was a professor of surgery and chair of the Department of Medical Education at UNTHSC. No evidence was presented regarding the job duties and responsibilities of Drs. Yurvati, Crow, and Surve, particularly with respect to reporting and investigating claims and risk management.

## Standard of Review

A trial court's ruling on a plea to the jurisdiction or a motion to dismiss for lack of subject-matter jurisdiction is reviewed de novo. *Univ. of N. Tex. Health Sci. Ctr. v. Jimenez*, No. 02-160-0368-CV, 2017 WL 3298396, at \*3 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (noting that absence of subject-matter jurisdiction may be raised by different procedural vehicles); *In re Tex. Dep't of Transp.*, 510 S.W.3d 701, 705 (Tex. App.—El Paso 2016, orig. proceeding) (citing *Bland ISD* and noting that "jurisdictional challenge[s] can be raised by a number of procedural vehicles, including a plea to the jurisdiction, a motion to dismiss, or a motion for summary judgment").

If a plea to the jurisdiction or comparable procedure challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just as the trial court must. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *Jimenez*, 2017 WL 3298396, at \*3; *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 857 (Tex. App.—Fort Worth 2010, pet. denied). If there is a fact

question on the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the factfinder will resolve the question. *Miranda*, 133 S.W.3d at 227–28; *Jimenez*, 2017 WL 3298396, at *3; *Jenkins*, 307 S.W.3d at 857. However, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228; *Jenkins*, 307 S.W.3d at 857. This standard generally mirrors that of a traditional summary judgment. *Miranda*, 133 S.W.3d at 228; *see* Tex. R. Civ. P. 166a(c); *Jimenez*, 2017 WL 3298396, at *3. Although actual notice is a fact question when the evidence is disputed, it can be determined as a matter of law. *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004). As stated in *Jimenez*, "the parties do not dispute the evidence presented on the jurisdictional issue; they simply dispute its legal significance. Accordingly, we will review the trial court's ruling as a matter of law." *Jimenez*, 2017 WL 3298396, at *4.

We have jurisdiction over the trial court's interlocutory order under Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

## Discussion

### A. Governmental Immunity and Notice

Generally, the State and its governmental units are immune from tort liability unless the Legislature has expressly consented to the suit by waiving sovereign immunity. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). Whether a

9

governmental unit is immune from liability for a claim depends entirely upon statute. *Harrison v. Univ. of Tex. Health Sci. Ctr. at Hous.*, No. 01-12-00980-CV, 2013 WL 4680407, at *2 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.); *see also Lenior v. U.T. Physicians*, 491 S.W.3d 68, 75–76 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (op. on reh'g). Absent waiver of sovereign immunity, a court has no subject-matter jurisdiction to entertain a suit against a governmental unit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *Kamel v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). When a trial court is without jurisdiction to hear a cause, it must dismiss the cause and refrain from rendering a judgment on the merits. *Harrison*, 2013 WL 4680407, at *2; *Li v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 984 S.W.2d 647, 654 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Here, it is undisputed that UNTHSC is a governmental unit.

The TTCA provides a limited waiver of sovereign immunity. *Miranda*, 133 S.W.3d at 224; *Harrison*, 2013 WL 4680407, at *2. More specifically, Texas Civil Practice and Remedies Code Section 101.021 states:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

In order to qualify for the waiver of sovereign immunity under the TTCA, the plaintiff must comply with its notice requirement. *Univ. of Tex. Health Sci. Ctr. at Hous. v. Owens*, No. 01-18-00464-CV, 2019 WL 4065289, at *5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, pet. filed) (mem. op.). The notice requirement is jurisdictional. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 537–38 (Tex. 2010). The formal notice requirement of the Act provides:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a). Failure to comply with the notice provision requires dismissal. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775–76 (Tex. 2018).

The governmental entity is entitled to receive written notice of the claim "not later than six months after the day that the incident giving rise to the claim occurred."

11

*Colquitt v. Brazoria Cty.*, 324 S.W.3d 539, 542 (Tex. 2010); Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a). The notice period begins to run when an incident occurs which is essential to the existence of the claim. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 356–57 (Tex. 2004) (stating prenatal injury to fetus was not incident giving rise to claim as child had no right of action before birth so live birth of child was essential incident giving rise to claim as live birth is essential for child to have claim for pre-natal injuries); *Jefferson Cty. v. Farris*, 569 S.W.3d 814, 821 (Tex. App.—Houston [1st Dist.] 2018, pet. filed) (holding in survival and wrongful death claim arising from exposure to carcinogen at work by judge, cancer diagnosis or manifestation of symptoms was last essential incident to existence of claim and starting point for notice of claim period). The discovery rule does not apply to the TTCA notice of claim rule. *Muniz v. Cameron Cty.*, No. 13-10-00689-CV, 2012 WL 1656326, at *4 (Tex. App.—Corpus Christi–Edinburg May 10, 2012, pet. denied) (mem. op.); *Timmons v. Univ. Med. Ctr.*, 331 S.W.3d 840, 848 (Tex. App.—Amarillo 2011, no pet.); *Putthoff v. Ancrum*, 934 S.W.2d 164, 174 (Tex. App.—Fort Worth 1996, writ denied); *Univ. of Tex. Med. Branch at Galveston v. Greenhouse*, 889 S.W.2d 427, 431–32 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

However, the TTCA formal written notice requirement does not apply if the governmental unit has actual notice that the death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged. Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c); *City of San Antonio*, 543 S.W.3d at 776; *Cathey v.*

*Booth*, 900 S.W.2d 339, 341 (Tex. 1995).  As stated by the Supreme Court in *City of San Antonio*:

> To have actual notice, a governmental unit must have the same knowledge it *is entitled to receive under the written notice* provisions of the TTCA.  *See Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004).  Thus, the actual notice provision requires that a governmental unit has subjective awareness that its fault, as ultimately alleged by the claimant, produced or contributed to the claimed injuries.

*City of San Antonio*, 543 S.W.3d at 776 (emphasis added).

Such actual notice must be acquired within six months of the incident giving rise to the claim.  *Jimenez*, 2017 WL 3298396, at *4.  The incident giving rise to the claim is the alleged act or omission committed by the health care provider which caused the plaintiff's alleged harm.  *Owens*, 2019 WL 4065289, at *6 (deciding date of incident was the date of the emergency room treatment at the hospital, not the date when the emergency physician moved for dismissal and substitution of hospital in his place); *Garrett v. Harris Cty. Hosp. Dist.*, No. 01-07-00836-CV, 2008 WL 3522258, at *3 (Tex. App.—Houston [1st Dist.] Aug. 14, 2008, no pet.) (mem. op.) (stating notice of claim accrual date was when hospital failed to promptly advise patient of biopsy results, not last date of treatment from ongoing course of treatment).

"Actual notice may be imputed to the governmental entity by an agent or representative who receives notice of the *Cathey* elements and who is charged with a duty to investigate the facts and report them to a person of sufficient authority."  *Univ. of Tex. Health Sci. Ctr. at Hous. v. McQueen*, 431 S.W.3d 750, 755 (Tex. App.—

Houston [14th Dist.] 2014, no pet.); *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339–40 (Tex. App.—San Antonio 2010, no pet.). However, as noted by this Court in *Jimenez*, "not all government-hospital employees—even treating physicians—hold positions from which their own knowledge will be imputed to the entity." *Jimenez*, 2017 WL 3298396, at \*5.

Likewise, a governmental hospital's own records may evidence actual notice, but the records must reveal the information required by *Cathey*. *Id.* at \*4–5; *Dinh v. Harris Cty. Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.). However, evidence of a death, injury, or bad result alone in medical records of a hospital does not create a fact issue on actual notice. *Cathey*, 900 S.W.2d at 341; *Jimenez*, 2017 WL 3298396, at \*4.

## B.    Formal Notice of Walton's Claim

The only formal written notice of claim presented by Walton in this case was a letter from her attorney to Dr. Yurvati dated February 15, 2016. The letter asserted a healthcare liability claim under Chapter 74 of the Texas Civil Practice and Remedies Code against Dr. Yurvati for Walton's injuries which she sustained as a result of the substandard and negligent medical care she received from Dr. Yurvati on or about May 14, 2015. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). The letter does not reference claims against anyone or any entity other than Dr. Yurvati nor does it reference injuries occurring at any other time. UNTHSC does not contest that this letter provided actual notice of a claim against Dr. Yurvati and UNTHSC arising from

14

Dr. Yurvati's surgical treatment on or about May 14, 2015. UNTHSC denied any notice of claim (formal, actual, or otherwise) before February 15, 2016, but acknowledged receipt of this letter on February 15, 2016, and acknowledged that this letter was notice to UNTHSC of the claim arising from Dr. Yurvati's care but denied it was formal notice to UNTHSC. We construe this argument to mean, consistent with the evidence, that UNTHSC did not receive formal notice of Walton's claims against it before suit was filed but received actual notice of Walton's complaints about Dr. Yurvati's surgery causing her injuries. However, UNTHSC contends that this letter, for formal or actual notice purposes, was untimely.

Dr. Yurvati's surgical treatment occurred on May 14, 2015. Although there can be more than one "incident" for purposes of the TTCA notice, the date of the treatment allegedly causing the injury was May 14, 2015, the date of surgery. *See Garrett*, 2008 WL 3522258, at *3. This would have resulted in a notice deadline no later than November 14, 2015. Therefore, Walton's notice letter to Dr. Yurvati did not qualify as timely written notice of a TTCA claim even though it was timely for purposes of Chapter 74 limitations. *See Timmons*, 331 S.W.3d at 846 (holding timely notice of healthcare liability claim does not excuse failure to give timely TTCA notice). Therefore, as to Walton's claims against UNTHSC arising from Dr. Yurvati's surgical care, her claims are barred because of lack of timely formal notice under the TTCA, unless UNTHSC had timely actual notice.

15

Walton's Original Petition and First Amended Original Petition also allege claims against UNTHSC arising from TOS care and treatment rendered by other unspecified UNTHSC personnel after the surgery in question through November 30, 2015. The notice letter to Dr. Yurvati does not purport to give notice of claim for conduct of anyone other than Dr. Yurvati and does not advise UNTHSC that it is being sought to be held responsible for wrongful conduct. This letter is therefore insufficient to provide formal written notice of claim for any acts or omissions of UNTHSC directly or vicariously. *See Casanover v. Tomball Reg'l Hosp. Auth.*, No. 01-04-00136-CV, 2006 WL 23407, at *3 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (mem. op.) (deciding attorney's letters advising of "injuries sustained" on a date and requesting medical records and billing information were insufficient because the injuries were not described, the incident was not described, and the letters did not claim that the hospital was liable); *Texana Cmty. MHMR Ctr. v. Silvas*, 62 S.W.3d 317, 324 (Tex. App.—Corpus Christi 2001, no pet.) (stating notice that does not indicate possible fault of governmental entity is inadequate).

Other than the letter to Dr. Yurvati, UNTHSC's only other formal notice of claim for liability to Walton was the filing of suit by Walton on January 19, 2017, with service on January 20, 2017. Filing of suit may constitute formal written notice of claim under the TTCA, if done within the six month requirement. *Colquitt*, 324 S.W.3d at 543. However, such was not the case here. There being no timely formal notice of claim for the alleged negligent treatment by Dr. Yurvati and the other

16

unspecified UNTHSC staff, Walton cannot prevail unless there was actual notice of the claims by UNTHSC.

**C.     Actual Notice of Claim**

Walton contends that UNTHSC had actual notice by virtue of the knowledge of Drs. Yurvati, Crow, and Surve and the contents of her medical records at UNTHSC. As previously noted, while actual notice to an agent or representative of a governmental entity may be imputed to the entity, the agent or representative must be one who is charged with a duty to investigate the facts and report them to a person of sufficient authority. This case involves the same treating physician as the one involved in *Jimenez*, i.e., Dr. Yurvati. In *Jimenez*, there was evidence that Dr. Yurvati was the treating surgeon, that he had been employed by UNTHSC as a faculty member for over twenty years, and had become, at some point, the Chair of UNTHSC's Department of Surgery. However, there was no evidence that he was responsible for investigating or reporting incidents. Given those facts, this Court held that there was no evidence upon which to impute Dr. Yurvati's knowledge to UNTHSC. *Jimenez*, 2017 WL 3298396, at \*6–7; *see also Tex. Tech Univ. Health Sci. Ctr. v. Lozano*, 570 S.W.3d 740, 748–49 (Tex. App.—El Paso 2018, pet. denied) (deciding mere reference to one doctor being a resident physician and two other doctors by name only without evidence of their duties for hospital in investigative, reporting, or risk management related activities was insufficient to impute their knowledge to hospital).

17

Likewise, there is no evidence in this case upon which to impute any knowledge by Drs. Yurvati, Crow, or Surve to UNTHSC. Other than Drs. Crow and Surve being physicians at UNTHSC, there is no evidence about their positions, duties, and responsibilities, especially regarding reporting and investigating claims and risk management. As in *Jimenez*, the only evidence about Dr. Yurvati, other than being Walton's treating surgeon, is that he is an employee of UNTHSC, is a surgical faculty member, and is Chair of the Department of Medical Education. There is no evidence establishing his duties and responsibilities, especially regarding investigating and reporting claims and risk management. The conclusion here can only be the same as in *Jimenez*, i.e., there is no basis to impute whatever knowledge these doctors may have to UNTHSC.

Finally, there is the issue of actual notice arising from the medical records from UNTHSC.[1] From June 2015 through October 29, 2015, the records reflect ongoing patient complaints regarding Walton's TOS, the continued diagnoses related to these complaints (including TOS, in whole or in part), and the treatments for these complaints, including the use of tangible medical instruments in the treatment. During this time frame, there was no reference in these records to wrong level rib surgery or that anything done or not done in Walton's care and treatment was

---

[1] Walton's attorney's letter to Dr. Yurvati is untimely for actual notice purposes because it was given and received more than six months after the date of the incident giving rise to the claim. *Jimenez*, 2017 WL 3298396, at *4.

18

wrongful or a cause of her ongoing complaints. Since the test for actual knowledge requires a subjective awareness of fault in causing the alleged injuries, these records are insufficient to raise a fact issue of actual notice. *Jimenez*, 2017 WL 3298396, at *3 ("Nonetheless, neither UNT Health's medical records nor the appellate record as a whole demonstrates that a perforated esophagus necessarily—or even most likely—must result from medical error."); *see also Lozano*, 570 S.W.3d at 747.

Dr. Surve's notes from the November 30, 2015 and January 15, 2016 visits do not contain any references to improper follow up care at UNTHSC or injuries arising from follow-up care. Thus, they do not constitute evidence of actual notice for injuries from follow-up care. They do contain references about there being an allegedly improper level surgery on the second rib instead of the first rib in the May 14, 2015 surgery. Assuming these two references might be some evidence of the actual notice element of subjective awareness of responsibility by UNTHSC for Dr. Yurvati's surgery, they were untimely since they were both made more than six months after the incident giving rise to the claim, i.e., the allegedly wrong level rib surgery. *See Jimenez*, 2017 WL 3298396, at *4.

## Conclusion

Because UNTHSC did not have timely and proper formal or actual notice of claim of the incidents giving rise to Walton's claims under the TTCA, the trial court's Order Denying UNTHSC's Plea to the Jurisdiction and Motion to Dismiss was

improper. Said order is hereby reversed and judgment is rendered that Walton's claims against UNTHSC are dismissed.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: January 16, 2020

20