COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, | § | No. 08-16-00227-CV |
|  |  | Appeal from |
| Appellant, | § |  |
|  |  | 168th District Court |
| v. | § |  |
|  |  | of El Paso County, Texas |
| GLORIA LOZANO, | § |  |
|  |  | (TC # 2014DCV1772) |
| Appellee. | § |  |

**O P I N I O N**

This interlocutory appeal from the denial of a plea to the jurisdiction asks us to decide whether Texas Tech University Health Sciences Center (Texas Tech), had actual knowledge of a possible malpractice claim within six months of Gloria Lozano's surgery. We conclude that it did not. Accordingly, we reverse the trial court and render judgment dismissing the suit for lack of subject-matter jurisdiction.

**FACTUAL SUMMARY**

On May 31, 2012, Gloria Lozano underwent a TAH/BSO procedure address several uterine fibroids.[1] Dr. Ghulam Murtaza performed the surgery and he was assisted Dr. Rafael Arcone.

---

[1] The acronym refers to a supracervical hysterectomy, cervical myomectomy, and bilateral salpingo-oopherectomy, and seprafilm placement that in lay terms means the surgical removal of the uterus, and possible removal of the cervix, ovaries, fallopian tubes, and other surrounding structures.

Both are alleged to be employees or agents of Texas Tech. The surgery was performed at University Medical Center of El Paso. The record does not reflect the affiliation between the hospital and Texas Tech, nor the affiliation of all the persons who were in the surgical suite that day.[2]

Lozano encountered persistent nerve pain following the procedure. Contending that the pain resulted from the misuse of surgical equipment, she served Texas Tech on March 20, 2013 with a formal notice of claim. She later filed suit alleging that during the surgery, employees or agents of Texas Tech caused nerve damage using a retractor or other surgical instruments.

Texas Tech responded by filing a plea to the jurisdiction and motion to dismiss, asserting that Lozano failed to serve her notice of claim letter within the six-month notice deadline under Texas law.[3] Lozano responded with an amended petition alleging that Texas Tech had actual notice of the claim which satisfies the statutory notice requirement.[4] As proof of actual knowledge, Lozano relied on several entries in her medical records made during follow-up visits at a Texas Tech clinic. Because both sides agree that Texas Tech was not given timely formal written notice of the incident, we focus only on whether Lozano's medical records as maintained by Texas Tech

---

[2] The perioperative record identifies Dr. Murtaza and Dr. Arcone as the surgeons, and further lists an anesthesiologist, a CRNA, two circulating nurses, and one scrub nurse as present during the surgery.

[3] TEX.CIV.PRAC.&REM.CODE ANN. § 101.101(a)(West 2011) provides:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
> (1) the damage or injury claimed;
> (2) the time and place of the incident; and
> (3) the incident.

[4] Section 101.101 provides in subsection (c):

> (c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

2

provided "actual notice" of her claim within six-months from May 30, 2012. We describe those records in some detail.

Lozano followed up in the Texas Tech OB/GYN clinic on June 14, 2012, two weeks after the surgery. A note in that medical record states that she was complaining of pain to the incision site. The physician at that time noted that it was "normal post op discomfort." On June 28, 2012, almost a month post-surgery, Lozano again complained of pain at the incision site and in the inner-upper thigh area. The examining doctor, William Scragg, advised Lozano to wait another four weeks for the swelling to go down and suggested the pain might be due to "positioning on [the] exam bed during surgery." Almost a month later, on July 23, 2012, Ms. Lozano continued to complain of pain over the incision site that was intermittent and had a burning-like quality. On August 31, 2012, she saw Dr. Rafael Arcone in the clinic, the resident doctor who assisted in the surgery. We reproduce the "History of Present Illness" note from that visit with its several typographical errors:

> 50 year old G6 P6, s/p supracervical hyst, cervical myomectomy, bilateral salpingo-oopherectomy and seprafilm placement on 5/31/12. Voiding well, denies constipation. only c/o pain over the insicion in the midline and on the left corner, intermitent, like burning sensation. no other. still after 3 month. syuspected nerve injury over insicion. she refused local anesthetic inyection before.

The same entry appears in a November 20, 2012 office visit note, with the addition that Lozano was still having pain, which was better following a prescription of Gabapentin. On that visit, Drs. Arcone and Scragg ordered a CT scan that showed no abnormalities at the incision site. The six-month deadline for notice ran on November 30, 2012. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 101.101(a)(West 2011).

In a March 4, 2013 chart entry, Lozano asked for a copy of her medical record so that she could seek care elsewhere; she also mentioned a possible lawsuit. On that visit, the treating

3

physician advised that the pain was most likely due to a nerve injury during the procedure, "which is part of the risks of surgery for which she was consented for. [sic]"

Texas Tech's plea to the jurisdiction contains the affidavit of its associate general counsel who states that after a thorough record search, and after inquiries to the appropriate offices, in the six-month period following the surgery Texas Tech found "no notice, either actual or written, that Gloria Lozano was claiming [Texas Tech], or its employees were negligent as result of the surgery performed on May 31, 2012." In response to Texas Tech's plea to the jurisdiction, Lozano filed a copy of her medical records. She also filed her own affidavit, stating that in the first six-month period following the surgery, and during follow-up visits, Texas Tech physicians told her that the pain was from "a nerve injury caused during the surgery on May 31, 2012."

The trial court denied Texas Tech's plea and this interlocutory appeal follows. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(8)(West Supp. 2017)(allowing interlocutory appeals from the granting or denial of plea to jurisdiction by a governmental entity)

**CONTROLLING LAW**

Texas Tech and the state actors who work for it are generally immune from suit, other than for those few claims for which the Legislature waives immunity. *Texas Parks & Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Texas Tech University Health Sciences Center v. Enoh*, 08-15-00257-CV, 2016 WL 7230397, at *6 (Tex.App.--El Paso Dec. 14, 2016, no pet.); *United States v. Texas Tech University*, 171 F.3d 279, 289 n.14 (5th Cir. 1999)("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions."). Through the Texas Tort Claim Act (TTCA), the Legislature has waived sovereign immunity for certain misuses of tangible personal property. TEX.CIV.PRAC.&REM.CODE ANN. § 101.021(2). And while Lozano pursues that theory, she must

4

also meet a further statutory requirement in the TTCA of providing notice of her claim to the governmental entity within six months of the of the incident giving rise the claim. *Id*. at § 101.101(a)(c).

That notice must reasonably describe the injury, the time and place of the incident, and the incident itself. *Id.* The TTCA's notice provision allows governmental entities to investigate while the facts are fresh in order to guard against unfounded claims, settle claims, and prepare for trial. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)(per curiam); *University of Texas Health Science Center at Houston v. McQueen*, 431 S.W.3d 750, 754 (Tex.App.--Houston [14th Dist.] 2014, no pet.). Failure to provide that notice deprives the trial court of jurisdiction and requires the court to dismiss the case. TEX.GOV'T CODE ANN. § 311.034 (West 2013)(pre-suit notice is a jurisdictional requirement in all suits against a governmental entity); *City of Dallas v. Carbajal*, 324 S.W.3d 537, 537-38 (Tex. 2010); *City of El Paso v. Hernandez*, 342 S.W.3d 154, 158-60 (Tex.App.--El Paso 2011, no pet.).

The TTCA provides, however, that formal written notice is excused "if the governmental unit has actual notice that . . . the claimant has received some injury[.]" TEX.CIV.PRAC.&REM. CODE ANN. § 101.101(c). To excuse lack of formal written notice, a claimant must establish that a governmental unit had actual notice of: "(1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Cathey*, 900 S.W.2d at 341. Nearly a decade after *Cathey*, the Texas Supreme Court clarified the second element of actual notice, stating:

> What we intended in *Cathey* by the second requirement for actual notice was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a). That includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury. . . . If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide,

5

even when it would not be unreasonable to believe that the governmental unit was at fault.

*Texas Dept. of Crim. Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004).

Several caveats further color the requirement of subjective awareness of fault. First, knowledge of an injury or a bad outcome does not show knowledge of fault. *Cathey,* 900 S.W.2d at 341. Otherwise, a hospital would have "to investigate the standard of care provided to each and every patient that received treatment," eviscerating the notice requirement's purpose. *Id*. Second, knowledge of fault is not the same as knowledge of liability. *University of Texas Southwestern Medical Center at Dallas v. Estate of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010)("Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed."). By example, the police department in *City of Dallas v. Carbajal* was aware that the absence of a barricade led to an injury, but because the department was not necessarily aware of who failed to put up the barricade, it had no actual subjective awareness of fault. 324 S.W.3d 537, 539 (Tex. 2010)(per curiam). A third caveat holds that no formal accusation need be made against the governmental entity to show its awareness of fault. *Simons*, 140 S.W.3d at 347. Fourth, a gratuitous denial of fault by the governmental entity does not show that it did not have an actual awareness of fault. *See Arancibia*, 324 S.W.3d at 550 (rejecting a requirement of an unqualified confession of fault to provide actual notice of an incident). And finally, merely investigating an accident does not provide a governmental unit with actual notice. *Simons*, 140 S.W.3d at 343-48; *City of El Paso v. Viel*, 523 S.W.3d 876, 888 (Tex.App.--El Paso 2017, no pet.).

### PLEAS TO THE JURISDICTION AND STANDARD OF REVIEW

A plea to the jurisdiction based on governmental immunity challenges a trial court's subject-matter jurisdiction. *Texas Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26

6

(Tex. 2004); *County of El Paso v. Navar*, 511 S.W.3d 624, 629 (Tex.App.--El Paso 2015, no pet.).

The function of the plea is "to defeat a cause of action without regard to whether the claims asserted

have merit." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). As the plaintiff,

Lozano carries the burden to allege sufficient facts to demonstrate that the trial court has subject-

matter jurisdiction over its claims. *City of El Paso v. Waterblasting Technologies, Inc.*, 491

S.W.3d 890, 895 (Tex.App.--El Paso 2016, no pet.); *see also Tex. Ass'n Bus. v. Tex. Air Control

Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). Because Texas Tech tendered some evidence challenging

the existence of a jurisdictional fact (here timely notice), the burden shifted to Lozano to

demonstrate at least the existence of a fact issue on that matter. *Waterblasting Techs.*, 491 S.W.3d

at 895 n.3.

When the plea to the jurisdiction challenges the existence of jurisdictional facts, we

consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional

issues raised. *Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. If the

evidence raises a fact question on jurisdiction, the plea must be denied. *Miranda*, 133 S.W.3d at

227-28; *Texas Dept. of Aging & Disability Services v. Loya*, 491 S.W.3d 920, 923 (Tex.App.--

El Paso 2016, no pet.). However, if the defendant's evidence is undisputed and demonstrates a

lack of jurisdiction, and if the plaintiff's responsive evidence does not raise a fact question on the

jurisdictional issue, as a matter of law the trial court must grant the plea to the jurisdiction. *Loya*,

491 S.W.3d at 924. Stated in the context before us, actual notice is a fact question when the

evidence is disputed, yet in many instances, it can be determined as a matter of law. *Simons*, 140

S.W.3d at 348. Here, the parties do not dispute the evidence presented on the jurisdictional issue;

they simply dispute its legal significance. Accordingly, we review the trial court's ruling as a

matter of law. *See id.*; *Miranda*, 133 S.W.3d at 228. We review *de novo* a trial court's ruling on

a plea to the jurisdiction. *See State Dept. of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Loya*, 491 S.W.3d at 923.

## ISSUES ON APPEAL

Texas Tech brings two issues on appeal. The first contends that the trial court erred in denying Texas Tech's plea based a lack of timely formal written notice. Lozano concedes that point, and we sustain the issue, but that only turns us to the contested issue of actual notice. In its second issue, Texas Tech contends Lozano failed to establish that it had actual notice of her claim. Even were it aware that Lozano had continuing complaints of pain, and even if that the pain could be from a nerve injury arising during the surgery, Texas Tech contends that it had no notice that any of its agents or employees committed any error contributing to the nerve injury. It alternatively contends that if any employee was aware of such error, Lozano has failed to show that the employee was in a position to report the incident or initiate an investigation. Conversely, Lozano contends the written entries into the medical record amply demonstrate that responsible Texas Tech employees were aware that a surgical error resulted in her injury.

## SUBJECTIVE KNOWLEDGE OF FAULT

Texas Tech first urges that Lozano has failed to show that Texas Tech was aware of an error resulting in a bad result, as distinct from just a bad result. The August and November medical records contain a note stating that Lucero had a possible nerve injury from the procedure. But the records do not state that the nerve injury arose from the misuse of surgical instrument by a Texas Tech agent or employee, or even that it was caused by an error.

As a part of its argument, Texas Tech contends that nerve injuries are a recognized complication of the TAH/BSO procedure. For proof of that proposition, it cites us to the informed consent documents that Lozano signed. Those consent forms are in Spanish and neither party

8

produced a translation. *See* TEX.R.EVID. 1009 (setting out procedure for admitting translation of document in a foreign language). It is not our duty to translate documents for litigants. *See Sartor v. Bolinger,* 59 Tex. 411, 413 (1883); *Lacoma v. Canto,* 236 S.W. 1013, 1014 (Tex.Civ.App.--El Paso 1922, no writ). We think this maxim particularly true of technical documents, such as a medical informed consent.

But even setting aside the informed consent documents, we find nothing in the medical record showing that the nerve injury resulted from an error by a Texas Tech agent or employee. That proof is necessary to put Texas Tech on notice of its fault, as distinct from a bad outcome. A chart entry by Dr. Scragg on June 28, 2012, suggested that the pain might be due to "positioning on [the] exam bed during surgery." Yet the procedure was performed at University Medical Center, and any positioning error could just as easily have been attributable to a non-Texas Tech employee. *See University of Texas Health Science Center at Houston v. Cheatham*, 14-14-00628-CV, 2015 WL 3878111, at *4 (Tex.App.--Houston [14th Dist.] June 23, 2015, no pet.)(mem. op.)(medical record showing needle left in patient failed to prove actual notice when the nurses for a non-governmental hospital could have equally been at fault).

Otherwise, the Texas Tech medical records only state that Lozano had a nerve injury that occurred during the surgery. Without an indication of why the injury occurred, Texas Tech was not subjectively aware of a possible claim. We contrast our record with the facts from the Texas Supreme Court's decision in *Arancibia.* Arancibia underwent a hernia surgery, performed by two resident doctors, under the supervision of an attending physician, Dr. Watson. *Arancibia,* 324 S.W.3d at 549. Two days later, she presented at the Emergency Room with abdominal pain. *Id.* at 546. An emergency surgery at that time showed that her bowel was perforated, leading to peritonitis, and her eventual death. *Id.* The day after her death, Dr. Watson emailed his immediate

9

supervisor to give him a "heads up on a terrible outcome" with a patient. *Id.* at 549. Watson surmised that the bowel perforation resulted from a retraction injury. *Id.* He specifically stated, "I have already spoken with risk [management]." *Id.* The Chair of Department was notified the same day, who acknowledged that he had "heard about" the incident. *Id.*

Although Dr. Watson claimed the error did not violate the standard of care, he conceded that "[a] technical error occurred during the original hernia operation resulting in a through-and-through small bowel injury" and that "[c]linical management contributed to" the patient's death. *Id.* The court found the record demonstrated the governmental entity's actual awareness of fault. *Id.* at 549.

Conversely, where the medical record only reflects a bad result, no inference of fault arises. *See McQueen*, 431 S.W.3d at 760 (notation in record of "bowel injury during hysterectomy" was insufficient to prove notice when no physician spoke with or notified risk management, any supervisor or department chair); *Univ. of N. Texas Health Sci. Ctr. v. Jimenez*, 02-16-00368-CV, 2017 WL 3298396, at *3 (Tex.App.--Fort Worth Aug. 3, 2017, pet. filed)(mem. op.) ("Nonetheless, neither UNT Health's medical records nor the appellate record as a whole demonstrates that a perforated esophagus necessarily--or even most likely--must result from medical error."). We similarly conclude that the medical record here only demonstrates a bad result, and not proof of any fault by Texas Tech.

Lozano counters that *Arancibia* also stands for the proposition that a governmental unit is on actual notice when there is a bad result and the governmental entity is the sole instrumentality of potential harm. *Arancibia*, 324 W.W.3d at 550. That conclusion was clear in *Arancibia* because the record showed the patient's bowel was perforated, and the only persons operating on the patient were the government surgeons. As we noted above, the record in *Arancibia* also included several

other potential acknowledgments of fault by the entities' representatives. *Id.* at 549 (notice to risk management, acknowledgment of technical and clinical management errors). What this record lacks is some indication of why a nerve injury might occur during a TAH/BSO procedure.[5] Nor is this the type of case where the medical error would be apparent to a lay reader of the medical record. *Compare Dinh v. Harris County Hospital District*, 896 S.W.2d 248 (Tex.App.--Houston [1st Dist.] 1995, writ dism'd w.o.j.)(plaintiff successfully raised actual notice issue through medical record showing nurses waited over five hours to transfuse the patient as ordered, leading to patient's stroke), *with Reynosa v. Bexar County Hosp. Dist.*, 943 S.W.2d 74, 78 (Tex.App.--San Antonio 1997, writ denied)(plaintiff unsuccessfully argued fetal heart monitor strip demonstrated fault of entity without any additional supporting evidence).

### IMPUTATION OF KNOWLEDGE

Alternatively, Texas Tech argues that any knowledge of the persons who made the medical record entries cannot be imputed to it. Actual notice may be imputed to a governmental unit, but it must be through an agent or representative who has the duty to investigate and report to a person of authority. *Univ. of Texas Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339 (Tex.App.--San Antonio 2010, no pet.), *citing Texas Tech Univ. Health Sci. Ctr. v. Lucero,* 234 S.W.3d 158, 163, 168 (Tex.App.--El Paso 2007, pet. denied); *Davis v. Mathis*, 846 S.W.2d 84, 87 (Tex.App.--Dallas 1992, no pet.). Other than a reference to Dr. Arcone as a "resident" physician, the record does not reveal what Dr. Murtaza or Dr. Arcone's exact positions are with Texas Tech, nor does it show what sort of duties--investigative, reporting, risk-management-related, or otherwise--that they may have. *See Jimenez*, 2017 WL 3298396, at *6-7 (mere fact that the doctor

---

[5] Lozano had filed her required expert report, but she did not include that as part of her response to the plea to the jurisdiction, nor does she urge it on appeal as evidence that was before the trial court.

making record entries was a university faculty member and at some unknown time, was chair of surgery department, did not show he was tasked with investigating or reporting incidents).

But Texas Tech never urged this argument below, and Lozano was never put on notice that the job duties and responsibilities of the physicians would be an issue. We suspect that had Texas Tech made the imputation claim a part of its argument below, the parties could have presented an adequate record so that the issue might be fairly decided. *See Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 340-41 (Tex.App--San Antonio 2010, no pet.)(deciding imputation issue on record setting out director of university's pediatrics residency program's job duties and responsibilities). We therefore decline to reach Texas Tech's alternative argument.

## CONCLUSION

We sustain Issue One and hold that Lozano did not provide timely formal notice. We also sustain Issue Two because Ms. Lozano does not demonstrate any disputed fact on actual notice. We therefore reverse the trial court's denial of the plea to jurisdiction and render judgment dismissing the suit for lack of subject-matter jurisdiction.

February 14, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.
Palafox, J., not participating

12