

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00299-CV

_____

TARRANT COUNTY HOSPITAL DISTRICT D/B/A JPS HEALTH NETWORK,
Appellant

V.

Sandra Dowdy, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-317133-20

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

In two issues in this interlocutory appeal,[1] Appellant Tarrant County Hospital District d/b/a JPS Health Network (TCHD) complains about the trial court's (1) denial of its plea to the jurisdiction alleging that Appellee Sandra Dowdy did not provide the required statutory notice of her health care liability claim and (2) overruling of its objections to Dowdy's expert report and denial of its motion to dismiss. We hold that because TCHD did not have the requisite timely notice of the claim, the trial court erred in denying the plea to the jurisdiction. Therefore, we need not address the second issue regarding the expert report, and we reverse and render judgment that Dowdy's claims against TCHD are dismissed.

## II. BACKGROUND

### A. Procedural

Dowdy sued TCHD and Dr. Kyle Orr[2]—who had performed a dental extraction in May 2018—on June 1, 2020, and alleged the following:

> On or about May 12, 2018, [Dowdy] sought help for her symptoms of excessive swelling and pain at an Urgent Care Center where she was given antibiotics for the first time. [Dowdy's] symptoms worsened, and she returned to [TCHD] on or about May 25, 2018, suffered seizures,

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8), (9).

[2]The record refers to Dr. Orr at various times as "DDS, MD," "DDS," and "DMD." For ease of reference, we will refer to him as "Dr. Orr" except where quoting from the record.

heart damage, brain abscess, an aneur[ys]m and severe complications from infection. At all times material hereto, [Dowdy] was a patient under the care of Defendants, Kyle Orr, and [TCHD], having sought Defendants' professional expertise, judgment, skill, competence, advice and treatment for surgical removal of all of her teeth. The care or treatment consisted of a complete dental extraction, and began on or about May 3, 2018 and has continued through the present date.

The petition stated that formal notice of the claim pursuant to Sections 74.051 and 74.052 of the Texas Civil Practice and Remedies Code was given on March 27, 2020, via a "statutory notice letter." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.051, .052. The petition did not mention notice of a claim under Section 101.101 of the Texas Civil Practice and Remedies Code (the Texas Tort Claims Act, or TTCA). *See id.* § 101.101. Dowdy described her damages and injuries as including "brain injury and heart damage, resulting in [Dowdy's] being placed on a PICC or peripherally inserted central catheter for approximately four weeks"; "anxiety, pain, and illness"; as well as "a broken jaw, life threatening infections, seizures, a brain abscess, and aneurysm." Attached to the petition were two March 27, 2020 letters from Dowdy's attorney to Dr. Orr and TCHD; a March 27, 2020 list naming sixteen physicians and health care providers of Dowdy's; and an authorization form for release of protected health information.

In response, TCHD and Dr. Orr filed their answer. It contained numerous affirmative defenses, including that TCHD and Dr. Orr "deny that they received timely, written or actual notice as required by the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code § 101.101."

3

Several months later, TCHD and Dr. Orr filed their objections to Dowdy's expert report. Dowdy responded to the objections and filed a supplemental expert report. The trial court ultimately sustained the objections and dismissed Dowdy's claims with prejudice. Thereafter, Dowdy filed a motion for new trial and a motion requesting a thirty-day extension to address the issues raised in the objections. The trial court granted the motion for extension and a new trial. TCHD and Dr. Orr renewed their objections to the expert report.

In May 2021, TCHD filed a motion to dismiss Dr. Orr pursuant to Texas Civil Practice and Remedies Code § 101.106(e), which requires dismissal of a governmental unit's employee on the governmental unit's motion in a suit against both. *See id.* § 101.106(e). The trial court granted the motion and dismissed all of Dowdy's claims against Dr. Orr with prejudice.

In June 2021, TCHD[3] filed a plea to the jurisdiction alleging that (1) Dowdy did not provide notice of her claim pursuant to Section 101.101 of the Texas Civil Practice and Remedies Code and (2) Dowdy had not pled sufficient facts demonstrating that the trial court had subject-matter jurisdiction. Specifically, TCHD asserted that it had not received timely written or actual notice of Dowdy's claim and that it was immune from the complaints of negligence because none of the claims involved the negligent use or misuse of tangible personal property. The plea to the

---

[3]Dr. Orr also originally joined in the plea to the jurisdiction because, at the time it was filed, he had not been dismissed from the case.

jurisdiction included (1) an affidavit by TCHD's Legal Claims Manager stating that TCHD did not have written notice of Dowdy's health care liability claim until April 13, 2020, when it received the letter dated March 27, 2020, from Dowdy's attorney, and therefore did not have "actual knowledge of its alleged fault producing or causing injury to [Dowdy] within six (6) months after the day that the alleged incident(s) giving rise to [Dowdy's] alleged claims occurred"; and (2) an affidavit by TCHD's custodian of records attaching eleven pages of medical records pertaining to Dowdy.

Dowdy amended her pleadings and filed responses to the plea to the jurisdiction and TCHD's objections to the expert report. In the response to the plea to the jurisdiction, Dowdy stated that she "does not argue that she has provided written notice to" TCHD, but instead argued that it had "actual notice of the claim shortly after the injury was visited upon [Dowdy]." Dowdy's response relied entirely on the medical records attached to TCHD's plea to the jurisdiction to show what she described as her "concerted effort . . . to notify [TCHD] of her injuries." After a hearing, the trial court denied the plea to the jurisdiction, overruled the objections to the expert report, and denied the Chapter 74 motion to dismiss. This appeal followed.

## B. Evidentiary

Both at the trial court and on appeal, the parties rely on the medical records attached to the plea to the jurisdiction to support their arguments about actual notice

5

of the claim.  Therefore, we will first examine the medical records in chronological order.

The first page of the records is a disclosure and consent form signed on May 3, 2018, wherein Dowdy requested "EXTRACTION OF TOOTH (TEETH) One or more diseased, non-functional, malpositioned, or impacted teeth" and "ALVEOPLASTY Malformed or sharp bone in the jaw that prevents the comfortable fit of dental appliances, or causes discomfort."[4]  According to the disclosure and consent form, the alveoplasty procedure "involves smoothing uneven or sharp bone in the jaw, usually in areas that have previously lost teeth."  The listed side effects include swelling, pain, discomfort, numbness, infection, fractures, and damage to the jaw, jawbone, or nearby structures.

On the same day that the disclosure and consent form was signed, the procedure was performed.  In the progress notes, Dr. Orr described the procedure and concluded with the following:  "The patient was given verbal and written post-operative instructions.  There were no intraoperative complications and the patient tolerated the procedure well.  Good hemostasis was obtained and the patient was discharged home."

The next record entry was on May 4, 2018, and reflected a "Telephone Encounter" at 10:06 a.m.:

---

[4]Capitalizations, omissions, abbreviations, and typographical errors in the medical records are unaltered.

6

Patient called requesting that Dr. Long[5] write her a prescription for some antibiotics due to mouth swelling from Oral surgery yesterday 5/3/18. She was only prescribed pain medication and cannot be seen by dental clinic for 2 weeks. PAtient is going out of town tomorrow and states it is urgent. Please all patient to advise.

At 2:44 p.m. on the same day, a licensed vocational nurse noted,

Returned pt call. Pt stated she had oral surgery yesterday and would like an rx for abx. Pt stated the oral surgeon yesterday told her that she did not need them "because of something like resistance." I advised the pt if she was having any issues she needed to speak with the clinic that did the procedure or go to the UCC/ER. Pt stated she didn't really want to speak with the oral surgery clinic because "I was not really impressed with them anyway." Again advised pt to seek are in UCC or ER for any urgent concerns. Pt verbalized understanding.

The next entry in the medical records is twenty days later, on May 24, 2018, at 4:39 p.m., in the form of a registered nurse's note based on a "Telephone Encounter."

That note reads,

**Reason for Disposition**
- Swelling is painful to touch

**Answer Assessment – Initial Assessment Questions**
1. ONSET: "When did the swelling start?" (e.g., minutes, hours, days)
   This morning
2. LOCATION: "What part of the face is swollen?"
   Lower left side and neck
3. SEVERITY: "How swollen is it?"
   Twice the size

The following day, on May 25, 2018, at 8:30 a.m., a medical doctor noted,

---

[5]There is nothing in the records identifying "Dr. Long" or explaining Dr. Long's relationship to Dowdy.

Patient came to clinic today for the c/o severe pain with swelling on left face, with swelling and pus discharge on left jaw area since yesterday. Pt told she had all teeth extracted on beginning part of May, 2018 at JPS by oral surgeon, and she was doing well after the surgery, but started getting pain on this area when she was on vacation in other State. Pt told she went to ER over there, where she had lab done, which shown WBC was elevated, and she was given Augmentin[6] for 10 days, pt told she taken those medication, but since yesterday it got worse, and swelling developed, pt told she called JPS Nurse triage yesterday who made this appointment with Provider to be seen today at JPS Watauga clinic. Patient denied any other complaints, like no fever or chills, no chest pain, no Short of Breath, no dizziness, no distress, no N/V/D, no bowel or bladder problems, no weakness or numbness.

Other notes on this day stated,

This is a recurrent problem. The current episode started yesterday. The problem has been unchanged. The pain is at a severity of 10/10. The pain is severe. Associated symptoms include facial pain and thermal sensitivity. Pertinent negatives include no difficulty swallowing, fever, oral bleeding or sinus pressure. She has tried NSAIDs for the symptoms. The treatment provided no relief.

In the "Review of Systems," the doctor noted, "Severe pain with swelling of left face, with pus discharge inside mouth on left jaw area since yesterday."

In the "Subjective" portion of the progress notes made on June 2, 2018, the record states,

After surgery the patient reports that after the surgery she had numbness of the left lower lip, left chin and left lower teeth. She left town after surgery and reports that 4 days later she began having left side facial swelling. She presented to a local UC and was given antibiotics which helped the swelling resolve. She reports that the numbness continued.

---

[6]Augmentin has been described as "a type of penicillin." *Stine v. Brown*, No. 01-94-00242-CV, 1994 WL 543477, at *1 (Tex. App.—Houston [1st Dist.] Oct. 6, 1994, writ denied) (not designated for publication).

On 5/24/18 she began having left side facial swelling again and presented to JPS ED on 5/25/18 with worsening swelling, difficulty swallowing and trismus. She was found to have a Left mandibular angle fracture, left lateral pharyngeal space, left submandibular space abscess vs possible osteomyelitis. She was admitted to OMFS for IV Unasyn.

The June 2 records also provided a brief summary of Dowdy's symptoms from the previous week. They reflect that on May 26, Dowdy "reports feeling that pain is under better control but she feels like the swelling has stayed the same." By the following day, the "swelling has decreased, no pain." On May 28, Dowdy was "having episodes of aphasia and left arm tremor, stroke team activated." At that time, "CT head, MRI brain and CTA head and neck ordered." Results from the tests were noted on May 29, and brief progress notes were added on May 30, 31, and June 1. The last entry in the medical records was on June 2: "Pain controlled. Drain removed yesterday. Denies n/v/f/c/d. Ambulating. Continuing to tolerate PO."

## III. DISCUSSION

### A. Standard of Review

A trial court's ruling on a plea to the jurisdiction alleging lack of subject-matter jurisdiction is reviewed de novo. *Univ. of N. Tex. Health Sci. Ctr. v. Jimenez*, No. 02-16-00368-CV, 2017 WL 3298396, at *3 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.). If the plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just as the trial court must. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Bland Indep. Sch.*

9

*Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Jimenez*, 2017 WL 3298396, at *3. If there is a fact question on the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and the factfinder will resolve the question. *Miranda*, 133 S.W.3d at 227–28; *Jimenez*, 2017 WL 3298396, at *3. However, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228; *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 857 (Tex. App.—Fort Worth 2010, pet. denied). When, as in *Jimenez* and here, "the parties do not dispute the evidence presented on the jurisdictional issue [but] simply dispute its legal significance," we will review the trial court's ruling as a matter of law. *Jimenez*, 2017 WL 3298396, at *4.

## B. Applicable Law

Governmental immunity protects political subdivisions of the State from lawsuits for damages. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). Hospital districts such as TCHD[7] have governmental immunity. *Id.*

---

[7]TCHD was "created under the authority of the Texas Constitution and [C]hapter 281 of the Texas Health and Safety Code." *Tarrant Cnty. Hosp. Dist. v. GE Auto. Servs.*, 156 S.W.3d 885, 891 (Tex. App.—Fort Worth 2005, no pet.) (citing Tex. Const. art. IX, § 4, and the former versions of current Tex. Health & Safety Code Ann. §§ 281.001–.124); *Armendarez v. Tarrant Cnty. Hosp. Dist.*, 781 S.W.2d 301, 303 (Tex. App.—Fort Worth 1989, writ dism'd) ("It is undisputed that the Hospital District is a governmental entity to which the doctrine of governmental immunity would be applicable.").

Absent a waiver of sovereign[8] immunity, a court has no subject-matter jurisdiction to entertain a suit against a governmental unit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The TTCA provides a limited waiver of immunity. *Miranda*, 133 S.W.3d at 224. However, that waiver occurs only when notice of a claim against the governmental entity is provided as the Act prescribes. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775–76 (Tex. 2018). With regard to notice, the TTCA states,

(a)    A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1)    the damage or injury claimed;

(2)    the time and place of the incident; and

(3)    the incident.

Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a).

The purpose of the notice requirement is to ensure the prompt reporting of claims to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *Cathey v. Booth*, 900 S.W.2d 339,

---

[8]The immunity enjoyed by a political subdivision is referred to as "governmental immunity," while the immunity enjoyed by the State is "sovereign immunity." *Osman v. City of Fort Worth*, No. 02-21-00117-CV, 2022 WL 187984, at *8 n.15 (Tex. App.—Fort Worth Jan. 20, 2022, no pet. h.) (mem. op.) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)). For ease of reference, we use the phrase "sovereign immunity" for both concepts. *See Reata Constr. Corp.*, 197 S.W.3d at 374 n.1 (doing similarly).

341 (Tex. 1995). Failure to comply with the notice provision requires dismissal. *Tenorio*, 543 S.W.3d at 775–76.

However, the notice requirements of Section 101.101(a) "do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c). As we recently explained,

> More than a quarter of a century ago, in *Cathey v. Booth*, the Texas Supreme Court construed the Texas Tort Claims Act's actual-notice provision to require "knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." 900 S.W.2d at 341. All three elements are required: "[s]tanding alone, knowledge that an injury has occurred does not establish actual notice." *Jimenez*, 2017 WL 3298396, at *4 (quoting *Univ. of Tex. Health Sci. Ctr. at Houston v. Cheatham*, No. 14-14-00628-CV, 2015 WL 3878111, at *3 (Tex. App.—Houston [14th Dist.] June 23, 2015, no pet.) (mem. op.)). *Cathey* is still the law of the land, and it is binding precedent on this court.

*Osman*, 2022 WL 187984, at *9.

The governmental unit must have knowledge equivalent to what a formal Section 101.101(a) notice would have provided, which "includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury." *Jimenez*, 2017 WL 3298396, at *4 (citing *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Est. of Arancibia*, 324 S.W.3d 544, 548–49 (Tex. 2010) (quoting *Tex. Dep't of Crim. Just. v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004))). Medical records may create a fact issue on actual notice only if they "indicate to the [government] hospital its

12

possible culpability in causing the injuries." *Id.* (quoting *Dinh v. Harris Cnty. Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.)).

## C. Analysis

In its first issue, TCHD argues that it did not have actual notice of the claim because the "evidence relied upon by [Dowdy], TCHD's medical records, did not show that TCHD had subjective awareness of its fault, as alleged by [Dowdy], in contributing to or producing her injury." Dowdy responds that she "produced evidence from her medical records to the trial court that showed that TCHD was aware of the nature of the injury as well as the identity of the responsible employee, satisfying the TTCA requirements."[9] To support her actual-notice argument, Dowdy relies on the entries made in the medical records on May 4, 24, and 25, and on June 2.

After reviewing the medical records and applying *Cathey*'s three-element actual-notice standard, we cannot find within them anything that would provide TCHD subjective awareness that it was at fault in producing or contributing to Dowdy's injuries. On the day of the extraction, also the first entry in the medical records, Dr. Orr detailed the medical procedure that he performed and noted that "[t]here were no intraoperative complications." Although Dowdy called the hospital the next morning

---

[9]In her brief, Dowdy agrees that "TCHD is a hospital district controlled and managed by Tarrant County, and therefore, pursuant to Chapter 281 of the Texas Health and Safety Code, it is a governmental entity and any claim against it is subject to the Texas Tort Claims Act." Dowdy also acknowledges in her brief that she "did not provide written notice of her claim to TCHD until outside of the 6-month timeframe required under the Texas Tort Claims Act," but she states that "TCHD did have actual notice of the errors and negligence committed by June 2, 2018."

and requested a prescription for antibiotics "due to mouth swelling," there is no other indication of pain or possible infection. To the contrary, Dowdy said that she had been prescribed pain medication and expressed urgency only because she was going out of town the next day. When the telephone call was returned that afternoon, Dowdy said she "would like" a prescription for antibiotics. Dowdy was advised to "speak with the clinic that did the procedure or go to the UCC/ER." However, Dowdy stated that "she didn't really want to speak with the oral surgery clinic." She was then again advised to seek care "in UCC or ER for any urgent concerns," and she acknowledged that she understood.

The next entry in the medical records is twenty days later, on May 24, when Dowdy again called the hospital. The record reflects that her lower left side and neck were swollen and that the swelling had started that morning.

When she appeared the next day for a clinical assessment due to "severe pain with swelling on left face, with swelling and pus discharge on left jaw area since yesterday," Dowdy said that "she was doing well after the surgery, but started getting pain on this area when she was on vacation in [an]other State." Dowdy further said that although she had been "given Augmentin for 10 days," it was just since the prior day, May 24, that the pain had gotten "worse, and swelling developed." It was noted again that "[t]he current episode started yesterday."

On the last page of the medical records, the notes state that Dowdy's teeth had been extracted; that "[s]he left town after surgery and . . . 4 days later she began

14

having left side facial swelling," went to a local urgent care clinic, and "was given antibiotics which helped the swelling resolve"; and that "[o]n 5/24/18 she began having left side facial swelling again and presented to JPS ED on 5/25/18 with worsening swelling, difficulty swallowing and trismus." At that time, she "was found to have a Left mandibular angle fracture, left lateral pharyngeal space, left submandibular space abscess vs possible osteomyelitis."

There is nothing in the medical records to indicate

- the injuries occurred as Dowdy alleged in her pleadings—"severe grand mal seizures, a broken jaw, heart damage, brain abscess, tremors, and aneur[ys]m attributable to the infection caused by [TCHD and Orr]";[10]

- why the injury occurred;[11]

---

[10] *See Univ. of Tex. Sw. Med. Ctr. v. Alcantar*, No. 05-18-01320-CV, 2019 WL 3940980, at *3 (Tex. App.—Dallas Aug. 21, 2019, pet. denied) (mem. op.) ("We agree with UTSW that Alcantar's medical records are insufficient to establish that an injury occurred as she alleges, i.e., because of a cut to the rectum."). Although the records do show Dowdy had a broken jaw and was having symptoms that caused activation of the stroke team, nothing in the records links these symptoms to Dr. Orr or TCHD.

[11] *See Tex. Tech Univ. Health Sci. Ctr. v. Lozano*, 570 S.W.3d 740, 747 (Tex. App.—El Paso 2018, pet. denied) ("[W]e find nothing in the medical record showing that the nerve injury resulted from an error by a Texas Tech agent or employee. . . . Without an indication of why the injury occurred, Texas Tech was not subjectively aware of a possible claim.").

- TCHD's or Dr. Orr's fault in causing either the infection or the need for post-surgical treatment;[12]

- TCHD's subjective awareness[13] of its alleged fault;[14] or

---

[12]*See Osman*, 2022 WL 187984, at *10 ("[T]his evidence gave no indication that the Governmental Entities had notice that they were allegedly at fault for producing or contributing to Abdillahi's death."); *Reynosa v. Bexar Cnty. Hosp. Dist.*, 943 S.W.2d 74, 78 (Tex. App.—San Antonio 1997, writ denied) ("[R]ecords must communicate culpability in David Reynosa's injury.").

[13]*See Univ. of N. Tex. Health Sci. Ctr. v. Walton*, No. 02-19-00193-CV, 2020 WL 241383, at *8 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.) (mem. op.) ("During this time frame, there was no reference in these records to wrong level rib surgery or that anything done or not done in Walton's care and treatment was wrongful or a cause of her ongoing complaints. Since the test for actual knowledge requires a subjective awareness of fault in causing the alleged injuries, these records are insufficient to raise a fact issue of actual notice."); *Jimenez*, 2017 WL 3298396, at *5 ("We have reviewed UNT Health's records and cannot find within them anything that rises to the level of subjective awareness that UNT Health was at fault in producing or contributing to Knight's injuries."); *Cheatham*, 2015 WL 3878111, at *5 ("Although it was error to leave a needle inside Cheatham's chest, the evidence shows that the Health Science Center did not know how this error occurred, nor did it accept responsibility for the error. . . . These circumstances do not establish the Health Science Center's subjective awareness of fault."); *Casanover v. Tomball Reg'l Hosp. Auth.*, No. 01-04-00136-CV, 2006 WL 23407, at *4 (Tex. App.—Houston [1st Dist.] Jan. 5, 2006, no pet.) (mem. op.) ("Even if the Hospital were aware of the information in its medical records relied upon by Dr. Lee and Nurse Kemp in forming their opinions, we hold that this information failed to adequately convey the Hospital's subjective awareness that its fault produced or contributed to the claimed injury.").

[14]"Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed." *Arancibia*, 324 S.W.3d at 550.

- apportionment of fault between TCHD and Dr. Orr and any of the other healthcare providers.[15]

In her response to the plea to the jurisdiction, Dowdy stated that she was alleging "injury due to negligent surgery (improper extraction leading to broken mandible, infection) as well as negligent post-surgery treatment (infection not treated promptly or properly, spreading and causing abscess, aneurysm, and brain damage)." However, there is nothing in the medical records showing that any of Dowdy's injuries resulted from an error by either Dr. Orr or TCHD. *See Lozano*, 570 S.W.3d at 747. That proof is necessary to put TCHD on notice of its fault as opposed to a bad result, which standing alone, does not create a fact issue on actual notice. *See Walton*, 2020 WL 241383, at *6.

According to Dowdy's brief, her expert's supplemental report "focused on the two types of negligence claims" she made: "the negligence claim concerning the dental surgery (specifically, the dental extraction and alveoplasty) that was done by Dr Orr and 'TCHD staff' on May 3, 2018," and "the postoperative negligence claims asserted against Dr. Kyle Orr and the TCHD healthcare providers/staff." However, with the exception of Dr. Orr, Dowdy fails to detail which TCHD "healthcare providers/staff" were negligent even though her response to the plea refers to

---

[15]*See Cheatham*, 2015 WL 3878111, at *5 ("The medical records, however, do not apportion fault to the doctors, nor do the records otherwise suggest that the Health Science Center was subjectively aware of its fault in producing or contributing to Cheatham's injury.").

"employee Robert Forsyth," "Michael Haseloff, LVN," "nurse Eleni Richardson," and "employee Mohd Rakib Uddin, MC." Moreover, her pleadings state that while at TCHD, Dowdy "was placed under the care of Dr. Azhar Afaq, Dr. Kyle Orr, Dr. George Cravens, Dr. Robert Germann, Dr. Aarth Narasimhan, Dr. Isherpreet Shergill, Dr. Michael Siew, Dr. Sohaib Soliman, Dr. Mohd Uddin, Dr. Kumar Onali, Dr. Ratna Reddy, Dr. Matthew Fiesta and Dr. Herman Kao," and she attached a list naming sixteen medical providers as giving her care. Again, she fails to apportion fault among these individuals. *See Cheatham*, 2015 WL 3878111, at *5.

TCHD contends that, at most, the medical records in this case demonstrate that it had knowledge of Dowdy's treatment at TCHD but do not reveal subjective awareness of TCHD's fault or its potential culpability. We agree. The records note that "[t]here were no intraoperative complications," and, according to Dowdy herself on May 25, "she was doing well after the surgery." At no point do the records connect her complaints with the alleged errors in treatment received at TCHD.

Throughout her response to the plea to the jurisdiction and in her brief, Dowdy points to the fact that she had pain and infection after the surgery. However, there is no mention of pain or infection the day after surgery, only swelling. And there is no mention of anything connecting the later pain and infection to the procedure performed by Dr. Orr. To the extent that Dowdy suffered known side effects of the procedure—which the medical records reflect include swelling, pain, discomfort, numbness, infection, fractures, and damage to the jaw, jawbone, or

18

nearby structures—the occurrence of these alone cannot rise to actual notice. *See Wesela v. Univ. of Tex. Med. Branch at Galveston*, 899 S.W.2d 292, 294 (Tex. App.—Houston [14th Dist.] 1995, no writ) ("[T]he occurrence of known side effects or known potential complications of brain surgery cannot rise to 'actual notice' of negligence.")

Dowdy also points to notice of her injuries as reflected in the medical records as comporting with her duty to notify TCHD of her claim. However, it is well settled that notice of injuries is insufficient to put a hospital on notice of a possible claim. As explained by the Texas Supreme Court,

> Many governmental units may, in the ordinary course of events, have knowledge of deaths, injuries, or property damage but not warning—"notice"—that a lawsuit might eventually be filed alleging the governmental unit was responsible in some way, shape, or form. . . . But mere knowledge that something happened somewhere to someone or something would hardly ever be enough to alert a governmental unit of alleged wrongdoing and the necessity of mounting a defense.
>
> . . . .
>
> Hospitals are innately epicenters of unhappy outcomes of varying degrees. There is no warning in mere knowledge of that fact.
>
> . . . .
>
> We have consistently made clear that *actual* notice does not mean *potential* notice and that to actually be on notice, the governmental unit must be subjectively aware of fault in the way alleged, meaning potential responsibility.

*Worsdale v. City of Killeen*, 578 S.W.3d 57, 72–76 (Tex. 2019). Here, the medical records relied upon by Dowdy to meet her burden of proving actual notice of her claim fail to meet the standard articulated by the supreme court.

TCHD's plea to the jurisdiction should have been granted on the lack-of-notice ground. Therefore, we sustain TCHD's first issue.

## IV. CONCLUSION

Having sustained TCHD's first issue and not needing to address its second issue,[16] we reverse the trial court's order denying the plea to the jurisdiction and render judgment that Dowdy's claims against TCHD are dismissed.

/s/ Dana Womack

Dana Womack
Justice

Delivered: March 10, 2022

---

[16]*See* Tex. R. App. P. 47.1.